Curties TOLLIVER,
Employee/Appellant,

v.

FRIEND TIRE COMPANY,
Employer/Respondent,

and

Division of Employment Security,
Respondent.

No. ED 95544.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 14, 2011.

John J. Ammann, St. Louis, MO, for Employee/Appellant.

Friend Tire Company, Monett, MO, Acting pro se.

Ninion S. Riley, Division of Employment Security, Jefferson City, MO, for Respondent/Respondent.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Curties Tolliver (Employee) appeals from a decision of the Labor and Industrial Relations Commission (Commission) denying him unemployment benefits. We reverse and remand.

*Factual and Procedural Background*

Employee was employed by Friend Tire Company (Employer) for just under 90 days when he was discharged in March 2010. Employee worked between 40–50 hours per week as a tire delivery route driver. On March 4, 2010, Employee was driving one of Employer's trucks making a delivery. Employee had driven two or three different trucks for Employer and had driven this particular truck before. Employee was relying on a GPS system and was unfamiliar with the route he was driving. The road narrowed from two lanes down to one. Employee approached a bridge, which had no "caution" or "low clearance" sign. Rather, a sign on the bridge indicated that the overpass was 11-feet, 2–inches high. Employee looked around the truck's cab for the height of the truck but its height was not listed. The height of the truck is posted in some of the trucks. As he approached the overpass, the street sunk down and it appeared that there was enough clearance for the truck to pass under the bridge. Employee saw an 18–wheeler in front of him pass under the bridge. Employee testified that he thought his truck would clear the overpass.

When Employee attempted to drive under the overpass, he hit it, stopping the truck and seriously damaging it. It was later determined that the height of the truck exceeded the overpass by 14 inches. Employee testified that he did not realize that the truck was too tall to clear the overpass until he hit the bridge. Employee was driving 28 m.p.h. when he hit the bridge, 8 m.p.h. over the posted speed limit. Employee testified that he was exceeding the speed limit because he was not familiar with the area and was traveling with the flow of traffic in a single lane.

Employee testified that he could not have stopped the truck before the overpass even if he had tried because the road was unpaved and covered with rock. Employee was issued a citation for failing to obey a traffic control device, that being the sign marking the height of the bridge.

Employee was discharged the following day. James Budd (Budd), Employer's regional manager, testified that Employee was discharged because he had a preventable major accident. Budd testified that Employee had "made bad judgment by going too fast and underneath [the] overpass." Budd stated that Employee had 10 years' experience in truck driving and he would "assume" that Employee would know the height of the truck he was driving. Budd acknowledged that the height of the truck was not posted inside the truck and that he did not know if anyone in the company told Employee the truck's height.

Employee filed a claim for unemployment benefits, and Employer protested the claim. On March 30, 2010, a deputy for the Missouri Division of Employment Security (the Deputy) determined that Employee was disqualified from receiving unemployment benefits because Employee was discharged for misconduct connected with work. Employee appealed the Deputy's decision to the Division Appeals Tribunal (Tribunal). The Tribunal affirmed the Deputy's decision, finding that Employee was disqualified from unemployment benefits. The Tribunal found that Employee did not realize he would fail to clear the overpass until he hit it. The Tribunal found that Employee was discharged because he was involved in a preventable accident for which he was responsible. The Tribunal also found that Employee was required to know the height of the vehicle he was driving and operate it accordingly, and his failure to do so was a disregard of Employee's duties and obligations to Employer.

Employee appealed the Tribunal's decision to the Commission. On September 7, 2010, the Commission issued its order affirming the Tribunal's decision and adopting the Tribunal's decision with one member dissenting. This appeal follows.

### Point Relied On

■ On appeal, Employee argues the Commission erred when it determined that he was disqualified from receiving unemployment benefits because the Commission's decision was in excess of its power and contrary to the law under Section 288.210,[1] in that Employee's conduct of mistaking the height of the truck he was driving amounted to nothing more than an error in judgment, not misconduct connected with his work.

### Standard of Review

■ On appeal from a decision in an unemployment benefits proceeding, this Court may modify, reverse, remand for rehearing, or set aside the Commission's decision upon a finding that (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence to warrant making the award. Section 288.210. This court defers to the Commission's determinations as to the weight of the evidence and the credibility of the witnesses. *Dixon v. Division of Employment Sec.*, 106 S.W.3d 536, 539–40 (Mo. App. W.D.2003). Absent fraud, the Commission's findings of fact are conclusive if supported by competent and substantial evidence. Section 288.210. This Court is not bound by the Commission's conclusions of law or its application of the law to the facts. *Ayers v. Sylvia Thompson Residence Center*, 211 S.W.3d 195, 198 (Mo. App. W.D.2007). The issue of whether an employee's actions constitute misconduct associated with the employee's work is a

1. All statutory references are to RSMo 2006, unless otherwise indicated.

question of law that this Court reviews *de novo*. *Williams v. Enterprise Rent–A–Car Shared Services, LLC*, 297 S.W.3d 139, 142 (Mo.App. E.D.2009).

### Discussion

█ It is Missouri's declared public policy to set aside unemployment reserves for the benefit of individuals unemployed through no fault of their own. Section 288.020.1. The provisions of Section 288.020 *et seq.* are intended to be construed liberally to accomplish the State's public policy. Section 288.020.2. To execute this policy, "[d]isqualifying provisions are construed strictly against the disallowance of benefits." *St. John's Mercy Health System v. Div. of Employment Sec.*, 273 S.W.3d 510, 514 (Mo. banc 2009).

█ An employee is disqualified from receiving unemployment benefits if the Commission finds that he was discharged for misconduct connected with his work. Section 288.050.2. "Misconduct" is defined as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

Section 288.030.1(23). Each category of misconduct requires the employee to willfully violate the employer's rules and standards. *Nevettie v. Wal–Mart Associates, Inc.*, 331 S.W.3d 723, 727 (Mo.App. E.D. 2011). "Poor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct." *Hoover v. Community Blood Center*, 153 S.W.3d 9, 13 (Mo.App. W.D.2005). The employer has the burden of proving by substantial and competent evidence that the claimant was discharged for misconduct connected with work. *White v. Wackenhut Corp.*, 208 S.W.3d 916, 918–19 (Mo.App. E.D. 2006).

Here, the Commission found that Employee's failure to know the height of the vehicle he was operating was "a disregard of the employee's duties and obligations to the employer." This suggests the Commission found that Employee committed misconduct under the fourth definition, that being "negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." Section 288.030.1(23). This provision expressly requires negligence in such a degree or recurrence as to show an intentional and substantial disregard of the employee's duties and obligations. *Dixon*, 106 S.W.3d at 541. "We do not believe that accidents or negligence, without a showing of willful intent, can rise to the level of misconduct[.]" *Dobberstein v. Charter Communications, Inc.*, 241 S.W.3d 849, 852–53 (Mo.App. E.D.2007). "Because we human beings are fallible, ordinary negligence in isolated instances is not work-connected misconduct." *Yellow Freight System v. Thomas*, 987 S.W.2d 1, 3 (Mo.App. W.D.1998).

In *Yellow Freight* 987 S.W.2d 1, the employer terminated an employee truck driver after he struck a parked city bus and received a citation for careless and reckless driving. In that case, as the employee rounded a curve, he was blinded by the sun's reflection which prevented him from seeing the bus's brake lights. *Id.* at 2. The employee attempted to stop but hit

the bus after skidding on sand, slush and salt that was on the road due to nearby repair work. *Id.* Although the employee was cited for careless and reckless driving, the Commission found that his conduct was an isolated act of negligence, which did not amount to negligence "in such a degree or recurrence as to manifest culpability, wrongful intent or evil design." *Id.*

Here, as in *Yellow Freight* numerous external factors, outside of Employee's control, contributed to the collision. Employee was driving an unfamiliar route, in a truck that he only occasionally drove that did not have the height posted inside the cab. There was no evidence, and the Commission made no finding, that Employee's failure to know the height of his truck before driving it was intentional. The evidence presented at the hearing indicates that when Employee saw the overpass, he realized that he did not know the height of the truck so he looked for this information inside the truck's cab but the information was not posted. Employee then assessed the situation and determined, albeit incorrectly, that the truck could clear the overpass. The evidence indicates that Employee had an honest belief that he could drive under the overpass without damaging Employer's truck. *See Tenge v. Washington Group Intern., Inc.,* 333 S.W.3d 492, 498 (Mo.App. E.D. 2011) (employee who honestly believed that he was following the employer's safety rules exercised poor judgment in failing to de-energize an electrical panel and report a co-worker's injury, which does not rise to the level of willful or deliberate conduct sufficient to deny unemployment compensation).

■ The record indicates that Employee's actions were nothing more than simple acts of negligence or bad judgment. Employer recognized as much at the hearing, stating Employee had "made bad judg-

ment by going too fast and underneath [the] overpass." Employer never alleged, nor proved, that Employee willfully committed the alleged errors or omissions. Nor can it be said that Employee's negligence was of such a degree or recurrence as to show an *intentional and substantial* disregard of Employee's duties and obligations to Employer. See *Dixon,* 106 S.W.3d at 541. "An isolated act of simple negligence is not, as a matter of law, misconduct connected with work." *Yellow Freight,* 987 S.W.2d at 4.

While Employee's conduct may have justified Employer's decision to discharge Employee, Employer has failed to meet its burden of showing that Employee was discharged for misconduct connected with his work. The Commission's decision denying Employee unemployment compensation benefits is not supported by substantial and competent evidence. Appellant's Point is granted.

### Conclusion

We find that the Commission erred in finding that Claimant's actions amounted to misconduct which disqualified him from receiving unemployment benefits. Accordingly, we reverse and remand for further proceedings consistent with the opinion.

CLIFFORD H. AHRENS, J., and LAWRENCE E. MOONEY, J., concur.