

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| KIRK WILSON, | ) | No. ED104512 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| PROGRESSIVE WASTE SOLUTIONS | ) | |
| OF MO, INC., and DIVISION OF | ) | |
| EMPLOYMENT SECURITY, | ) | |
| | ) | |
| Respondent. | ) | Filed: January 24, 2017 |

### Introduction

Kirk Wilson ("Wilson") appeals from the Labor and Industrial Relations Commission's (the "Commission") determination that he was disqualified from receiving unemployment benefits because he committed misconduct in connection with his employment at Progressive Waste Solutions of Mo, Inc. ("Progressive Waste"). We reverse and remand to the Commission with instructions to award Wilson unemployment benefits.

### Factual and Procedural History

Progressive Waste is a solid waste hauling company where Wilson worked as a commercial driver from June 6, 2015 until his discharge on January 4, 2016. Wilson's duties primarily consisted of solid waste disposal. Wilson was involved in two accidents during his employment. On November 18, 2015, Wilson hit a light pole while driving through a parking lot to collect a trash container. Wilson was collecting the container later than normal and knew there were

1

children attending a day care in the area. Wilson stated he was cautiously watching to avoid hitting children and inadvertently hit the light pole. He was driving approximately ten miles per hour when the accident occurred. The accident caused $12,000 in damage to Progressive Waste's vehicle. Progressive Waste gave Wilson a final written warning.

On December 28, 2015, while collecting a trash container in a tight enclosure at an apartment complex, Wilson swiped a short concrete wall. It was raining, there was an improperly parked vehicle in the route, and there was no one to help Wilson through the tight space to avoid hitting the vehicle. The accident tore the air lines off the air tank. Progressive Waste's mechanic came to the apartment complex and reattached the air lines. There was no evidence presented regarding either the extent of the damage or the cost of repair. Wilson's supervisor sent him home that day and assured Wilson he was not terminated. Progressive Waste discharged Wilson one week later for preventable accidents.

Wilson stated that although he received an employee handbook, he was unaware of any policies regarding Progressive Waste's accident and disciplinary procedures. Progressive Waste failed to include any written accident and disciplinary policies in the record.[1]

After his termination, Wilson applied for unemployment benefits. Progressive Waste filed a written protest of Wilson's claim for benefits. A deputy for the Missouri Division of Employment Security (the "Division") determined Wilson was disqualified from receiving unemployment benefits because he was discharged for misconduct related to the two accidents. Wilson appealed the deputy's determination to the Division's Appeals Tribunal. The Appeals Tribunal held a hearing and affirmed the deputy's determination, finding that "[t]he claimant's recurrent negligence was of such degree as to manifest culpability and constitute misconduct" because he

---

[1] While the copy of the employee handbook included in the record lists some company policies, there is no reference to any accident or disciplinary policies.

struck stationary objects, and the accidents occurred less than two months apart. Wilson appealed the decision of the Appeals Tribunal to the Commission, which affirmed and adopted the decision of the Appeals Tribunal. Wilson now appeals to this Court.

## Points Relied On

Wilson raises two points on appeal. He argues the Commission erred in finding he engaged in misconduct connected with work because its ruling is erroneous as a matter of law pursuant to section 228.210[2] in that (1) two accidents that are six weeks apart and were determined to be the result of carelessness are not misconduct; and (2) the facts in the record do not support the Commission's finding that Wilson's two accidents that were six weeks apart are misconduct.

## Standard of Review and Burden of Proof

The Missouri Constitution guarantees the right of judicial review of administrative decisions affecting the substantive rights of individuals. MO. CONST. art V, § 18. Section 288.210 provides that this constitutional right may be exercised by filing a notice of appeal with the Commission and sets forth the standard of review that courts must apply:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law.

Section 288.210. This statute identifies four grounds on which a reviewing court may overturn the Commission's decision: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) the record lacks sufficient competent evidence to support the award. *Id.*; *Clay v. Fehlig Bros. Box & Lumber Co.*, 485 S.W.3d 780, 781 (Mo. App. E.D. 2016).

---

[2] All statutory references are to RSMo (2000), unless otherwise indicated.

"Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003); *see also Seck v. Dep't of Transp.*, 434 S.W.3d 74, 79 (Mo. banc 2014). "This Court defers to the Commission on issues involving the credibility of witnesses and the weight given to testimony." *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995). However, in so doing, we do not view "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Hampton*, 121 S.W.3d at 223. "Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law," which we review *de novo*. *Fendler v. Hudson Servs.*, 370 S.W.3d 585, 588–89 (Mo. banc 2012) (internal citations omitted).

When the Commission adopts the decision of the Appeals Tribunal, the Court of Appeals considers the Appeals Tribunal's decision to be the decision of the Commission for purposes of review. *Stahl v. Hank's Cheesecakes, LLC*, 489 S.W.3d 338, 342 (Mo. App. E.D. 2016).

"In general, a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." *White v. Div. of Emp't Sec.*, 431 S.W.3d 583, 586 (Mo. App. W.D. 2014) (internal citations omitted). As a result, Progressive Waste had the burden of proving by a preponderance of the evidence that Wilson committed misconduct connected with work. *See id.*

Discussion

A claimant is disqualified from receiving unemployment benefits if he was discharged for misconduct connected with work. Section 288.050.2. "Misconduct" is defined as:

[C]onduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:

(a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee;

(b) Conduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer;

(c) A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more unapproved absences following a written reprimand or warning relating to an unapproved absence unless such absences are protected by law;

(d) A knowing violation of a state standard or regulation by an employee of an employer licensed or certified by the state, which would cause the employer to be sanctioned or have its license or certification suspended or revoked; or

(e) A violation of an employer's rule, unless the employee can demonstrate that:

    a. He or she did not know, and could not reasonably know, of the rule's requirements;
    b. The rule is not lawful; or
    c. The rule is not fairly or consistently enforced.

Section 288.030.1(23) RSMo 2000 (Cum. Supp. 2015).

The parties do not dispute that Wilson had two accidents connected with work. The Commission, adopting the Appeals Tribunal's decision, found that "[t]he claimant's recurrent negligence was of such degree as to manifest culpability and constitute misconduct" because Wilson negligently struck stationary objects, and the accidents occurred less than two months apart.[3] For that reason, we review the claim of misconduct under section 288.030.1(23)(b).

---

[3] The Commission's decision provides, in pertinent part:

    The claimant was discharged for his involvement in two accidents in less than two months. The claimant demonstrated negligence in such degree or recurrence as to manifest culpability. Both accidents were due to the claimant's negligence as the claimant struck stationary objects. The

The parties agree that Wilson's actions were careless or negligent. In that regard, we acknowledge that Employer was justified in terminating Wilson's employment after the two accidents. *See Richardson v. Div. of Emp't Sec.*, 361 S.W.3d 425, 430 (Mo. App. W.D. 2011). However, "[w]hether an employer has solid grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation." *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo. App. W.D. 2005); *see also Tolliver v. Friend Tire Co.*, 342 S.W.3d 428, 432 (Mo. App. E.D. 2011). For a denial of benefits to be proper, Progressive Waste was required to prove that the accidents demonstrated "carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer." Section 288.030.1(23)(b); *see Richardson*, 361 S.W.3d at 430.

Missouri courts have consistently held that simple acts of negligence, accidents and mistakes, bad judgment, or poor workmanship do not rise to the level of scienter required to constitute disqualifying misconduct. *See, e.g.*, *Yellow Freight Sys. v. Thomas*, 987 S.W.2d 1, 2, 4 (Mo. App. W.D. 1998) (holding claimant demonstrated an isolated act of simple negligence, not misconduct, when he struck a parked bus because the sun's reflection prevented him from seeing the bus's brake lights, and the road conditions were poor); *Wieland v. St. Anthony's Med. Ctr.*, 294 S.W.3d 77, 79 (Mo. App. E.D. 2009) (finding no misconduct when claimant mistakenly mislabeled blood types); *Tolliver*, 342 S.W.3d at 432 (holding claimant exhibited poor judgment, not misconduct, when he misjudged the clearance for the truck he was driving to pass under a bridge); *McClelland v. Hogan Pers., LLC*, 116 S.W.3d 660, 665 (Mo. App. W.D. 2011) ("Poor

accidents occurred only six weeks apart. The claimant's recurrent negligence was of such degree as to manifest culpability and constitute misconduct.

6

workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct.").

Employer argues Wilson's accidents demonstrated culpability amounting to misconduct because he struck stationary objects both times even though he previously picked up trash containers at the locations without issue and was capable of operating the vehicle. We disagree.

There is no bright-line test for what qualifies as misconduct under Missouri law. *Stahl*, 489 S.W.3d at 343. Thus, the proper analysis for determining whether an accident caused by an employee in a company vehicle constitutes misconduct requires "a thorough review of the totality of the facts and circumstances of the incident as well as the context in which the incident occurred." *Id.*; *see also Tamko Bldg. Prods., Inc. v. Pickard*, 443 S.W.3d 68, 73 (Mo. App. S.D. 2014) ("The determination of misconduct is dependent on the facts and circumstances of each case.").

Based on the totality of the circumstances, we find Wilson's two accidents did not amount to misconduct. Regarding the accident on November 18, 2015, Wilson, although he previously collected trash containers at the location, was driving through the parking lot later than normal. Wilson knew there were children attending a day care in the area. He was driving cautiously to avoid hitting children and inadvertently hit the light pole. Likewise, on December 28, 2015, Wilson was carefully navigating the tight enclosure when he swiped the wall. It was raining, there was an improperly parked vehicle in the route, and there was no one to help Wilson through the narrow space in order to avoid hitting the vehicle. Moreover, Wilson was unaware of any policies regarding Progressive Waste's accident and disciplinary procedures, and the record is devoid of such policies. In light of the whole record, we decline to find Wilson demonstrated negligence in such degree or recurrence as to manifest culpability merely because he struck stationary objects

twice in less than two months.[4] On the contrary, we find Wilson's actions were wholly *consistent* with Progressive Waste's interests as well as his duties and obligations to Progressive Waste. Wilson was not speeding or driving in a reckless manner. Progressive Waste's own termination form failed to indicate Movant was terminated for misconduct despite the option to do so. Nor does the record suggest Wilson intentionally caused the accidents. Rather, Wilson was driving the vehicle cautiously on both occasions not only to ensure he collected the trash containers but also to ensure the safety of children and to avoid hitting the improperly parked vehicle. Wilson demonstrated simple negligence when he hit the light pole and misjudged the distance when he swiped the wall. Therefore, we find Wilson's acts of mere negligence and poor judgment do not rise to the level of culpability required to constitute disqualifying misconduct.[5] *See Yellow Freight Sys.*, 987 S.W.2d at 4; *Wieland*, 294 S.W.3d at 79; *Tolliver*, 342 S.W.3d at 432; *McClelland*, 116 S.W.3d at 665.

Progressive Waste argues *Yellow Freight*, *Wieland*, *Tolliver*, and *McClelland* were "swept away" when the legislature amended section 288.030.1(23) in August 2014. Prior to the amendment, "misconduct" was defined as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or *negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design,* or show an *intentional and substantial disregard* of the employer's interest or of the employee's duties and obligations to the employer.

---

[4] Although our standard of review requires us to defer to the Commission on issues of credibility, here, the Commission did not make any credibility determinations.

[5] We note the primary argument of both parties in their briefs and at oral argument was whether the Commission erred in finding Wilson demonstrated carelessness or negligence in such degree or recurrence as to manifest a *knowing disregard* of the employer's interest. *See* section 288.030.1(23)(b). As addressed above, however, that was not the basis for the Commission's decision. Our review is limited to the Commission's findings, and therefore we need only determine whether Wilson's actions demonstrated negligence in such degree as to *manifest culpability*. *See McClelland*, 116 S.W.3d at 665. However, even if the Commission determined Wilson's conduct demonstrated a knowing disregard of Progressive Waste's interest, we similarly find the record is devoid of any evidence to support that conclusion.

Section 288.030.1(23) RSMo 2000 (Cum. Supp. 2007) (emphasis added). The 2014 amendment, however, defines "misconduct" as: "[c]onduct or a failure to act *demonstrating carelessness or negligence* in such degree or recurrence as to *manifest culpability, wrongful intent, or a knowing disregard . . . .*" Section 288.030.1(23)(b) (emphasis added). Employer argues this statutory change significantly decreased the degree of scienter necessary for a finding of misconduct and thus prior case law is inapplicable. We disagree.

"When the legislature amends a statute, it is presumed that its intent was to bring about some change in the existing law." *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 777 (Mo. App. E.D. 2015). We presume the legislature acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent. *Hogan v. Bd. of Police Comm'rs of Kansas City*, 337 S.W.3d 124, 130 (Mo. App. W.D. 2011). This Court should never construe a statute in a manner that would moot the legislative changes because the legislature is never presumed to have committed a useless act. *Id.*

While the legislature's 2014 amendment omitted "evil design" and "intentional and substantial disregard," the statute still requires a finding that the employee "manifest culpability, wrongful intent, or a knowing disregard." Thus, we find the plain language of the statute as amended still requires *a level of culpability* in order to disqualify an employee from receiving unemployment benefits. *See Akins v. Dir. of Revenue*, 303 S.W.3d 563, 565 (Mo. banc 2010) ("[T]he primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute."). We acknowledge that *Yellow Freight*, *Wieland*, *Tolliver*, and *McClelland* were decided under the prior statute. However, we find the amendment did not abrogate their substantive holdings that mere negligence, mistakes, bad judgment, and poor workmanship do not rise to the level of culpability required to constitute disqualifying misconduct.

9

To hold otherwise would conflict with the underlying policy that employment security law "shall be liberally construed to accomplish its purpose to promote employment . . . by providing for the payment of compensation to individuals in respect to their unemployment." Section 288.020.2.

<u>Conclusion</u>

We find the Commission erred in determining Wilson's actions demonstrated misconduct. Accordingly, we reverse and remand to the Commission to award Wilson unemployment benefits.

_____
Angela T. Quigless, P.J.

Robert G. Dowd, Jr., J., and
Lisa S. Van Amburg, J., Concur.