Kristopher WEPPNER, Respondent,

v.

SHADE TREE SERVICE
CO., Appellant,

and

Division of Employment Security,
Respondent.

No. ED 105005

Missouri Court of Appeals,
Eastern District,
DIVISION THREE.

Filed: June 13, 2017

Whitney P. Cooney, 222 S. Central Avenue, Suite 900, St. Louis, MO 63105, FOR APPELLANT.

James F. Haffner, 3228 Ivanhoe Street, St. Louis, MO 63139, Meghan P. Myers, P. O. Box 1527, Jefferson City, MO 65102, FOR RESPONDENT.

ROBERT G. DOWD, JR., Judge

Shade Tree Service Company ("Employer") appeals from the decision of the Labor and Industrial Relations Commission ("Commission") holding that Kristopher Weppner ("Claimant") is not disqualified from receiving unemployment benefits because he was not terminated from his employment for misconduct connected with his work. We affirm.

Claimant and Claimant's foreman set out to trim trees around high voltage pow-

er lines. Claimant was instructed to operate the aerial lift, or boom, of the truck over a road. Claimant did so without a spotter and momentarily became distracted when he observed an oncoming semi-truck that looked as though it was going to collide with Claimant's truck. At that moment, Claimant caused the boom to come into contact with the power lines resulting in damage to Employer's boom and the power lines and knocking out power to a nearby factory.

Claimant was discharged following an investigation because Employer believed his operation of the boom disregarded Employer's policies, safety standards and practices. In particular, the following Employer policies were potentially implicated in this case:

17. Before going aloft the operator should make a complete survey of overhead conditions to familiarize himself with the location of lines, poles, buildings, tree limbs, guy wires, or other obstructions which might present a hazard to the operation.

18. When trimming trees near electric conductors, all wires should be considered energized at all times. The operator should never touch the wires with his body, tools, or any part of the boom. . . .

19. The operator should always face the direction he is moving and carefully observe the intended path of the lower boom when it is moved in any direction.

20. Consider stopping or diverting traffic by use of barricades or signal-

man before maneuvering the boom over a street or highway.

Employer's policies also identify "serious offenses" for which an employee is subject to immediate dismissal, including both insubordination and "[g]ross disregard of [Employer's] safety standards and practices," which includes "rules set by the customer." A section entitled "On-the-Job Conduct" also indicates that "[i]nsubordination will not be tolerated." In addition, Employer's performance manager testified to a rule requiring the presence of a spotter when the boom comes within a specified distance of the power lines or when it is operated over a roadway.

After Claimant filed a claim for unemployment benefits, a deputy for the Division of Employment Security ("Division") determined Employer discharged Claimant for misconduct connected with work and, therefore, determined Claimant was disqualified from receiving unemployment benefits. The Appeals Tribunal heard the appeal via telephone conference. Claimant and two witnesses on behalf of Employer testified. By decision dated May 13, 2016, the Appeals Tribunal affirmed the deputy's determination.

Claimant filed his application for review before the Commission via facsimile on June 13, 2016. The Commission reversed the decision of the Appeals Tribunal and held that Claimant was not disqualified from receiving unemployment benefits because he was not terminated from his employment for misconduct connected with his work. In particular, the Commission found the following. With respect to disputed facts, Claimant was credible. Claimant "asked his supervisor[1] to be his spot-

---

1. Employer also claims the Commission incorrectly referred to the foreman as Claimant's "supervisor" and that Claimant's supervisor was identified as someone other than the foreman working with Claimant at the time of the incident. Employer claims that there was no evidence to demonstrate that failing to follow the instruction of a foreman would result in termination since the foreman was not Claimant's supervisor. However, re-

ter prior to operating the boom," and the "[s]upervisor refused and instructed [Claimant] to operate the boom, regardless of the spotter's presence." While Claimant knew he was required to have a spotter, he "proceeded operating the boom as instructed by supervisor fearing that he would be discharged for insubordination by supervisor if he did not do so." Employer provided insufficient evidence establishing Claimant's "momentary distraction was of such severity as to manifest culpability." Claimant did not grossly disregard Employer's policies, standards and practices. To the extent Claimant may have violated a policy, "where an employee is following a supervisor's instructions, an employer's enforcement of a contrary 'rule' is unfair." Employer failed to establish that Claimant's conduct was frequent or severe enough to constitute misconduct under Missouri law, and Claimant was not discharged for misconduct connected with work. This appeal follows.

Employer alleges the Commission erred in three ways: (1) by acting without or in excess of its powers because it lacked jurisdiction to review the Appeals Tribunal's decision since Claimant's request for review to the Commission was untimely filed thirty-one days after the mailing of the Appeal Tribunal's decision, (2) in ruling that Claimant was not disqualified from receiving unemployment compensation

based upon its determination that Claimant's foreman "refused" to act as a spotter and (3) in ruling that Claimant was not disqualified from receiving unemployment compensation in that it concluded that Claimant's violation of a safety protocol was not of such severity as to manifest culpability despite evidence that Claimant's conduct resulted in significant property damage and a power outage and had the potential to cause severe injury or death.

■ In Point I, Employer claims that the Commission acted in excess of its powers because it did not have jurisdiction to review the Appeal Tribunal's decision since Claimant's request for review to the Commission was untimely filed thirty-one days after the mailing of the Appeal Tribunal's decision. Under Section 288.210(1), we can "modify, reverse, remand for hearing, or set aside the decision of the commission" where the Commission "acted without or in excess of its powers." While claimant's "failure to file a timely application for review divests the Commission of jurisdiction," *Phillips v. Clean-Tech*, 34 S.W.3d 854, 855 (Mo. App. E.D. 2000), we find no lack of jurisdiction and, therefore, no action in excess of the Commission's powers under the facts of this case.

Employer asserts Claimant filed his application for review by the Commission thirty-one days after the issuance of the

gardless of whether the individual Claimant was working with was a foreman or a supervisor, it was reasonable for Claimant, whose title was "tree trimmer," to assume the individual has some level of authority over Claimant, especially where Claimant testified to seeking out instruction from this individual and to fearing insubordination if he did not follow those instructions.

A common understanding of the role of a foreman would also indicate some level of authority. In fact, the noun, "foreman" is defined as "a *chief* and often specially trained workman who works with and commonly

*leads* a gang or crew" and "a representative of an owner or management *in authority over* a group of workers, a particular process or operation, a section of a plant or an entire organization," and the verb "foreman" is defined as *"to supervise* in the status of foreman." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 889 (2002) (emphasis added). In this case, it was reasonable for Claimant to conclude the foreman had some supervisory authority over him, and any distinction between "foreman" and "supervisor" under the facts of this case does not impact our analysis here.

Appeals Tribunal decision and, because the law provides for thirty days, the Commission lacked jurisdiction to issue any decision or hear the appeal. The regulations specifically provide that "[a]ny interested party to a decision of an appeals tribunal of the division may file an application to have the decision reviewed by the commission by filing the application ... within thirty (30) days following the date of notification or mailing of the decision...." 8 CSR 20-4.010(1)(A).[2] However, the regulations also provide that "[i]n instances where the last day for the filing of [any notice of appeal, application or other paper required under the law to be filed with the commission] falls on a Saturday, Sunday or legal holiday, the filing shall be deemed timely if accomplished on the next day which is not a Saturday, a Sunday or legal holiday." 8 CSR 20-2.010(4).

Here, there is no dispute that the Appeals Tribunal issued its decision on May 13, 2016, and that Claimant filed his application for review via facsimile on June 13, 2016. Thirty calendar days from May 13, 2016, would have been June 12, 2016, which was a Sunday. Accordingly, under Section 20-2010(4), Claimant had until Monday, June 13, 2016, to timely file his application for review, which he did, and the Commission, therefore, had jurisdiction to hear the case.

Employer argues that Section 20-2.010(5) "specifically carves out an exception" for applications for review filed in connection with employment security claims by providing that such applications are governed by 8 CSR 20-4.010. Section 20-4.010(1)(C) provides that "[a] fax received on a Saturday, Sunday or legal holiday will be considered filed on the next

regular division workday," and Employer argues that this language applies *instead of* rather than *in addition to* the language in Section 20-2.010(4) noted above because the regulations both govern filing practice and procedure. Employer further argues that to read the regulations otherwise would result in two contradictory regulations governing the same subject matter, but Employer attempts to create a contradiction that does not exist.

"When examining a provision or subsection, it must be viewed in the light of the entire regulation, and, if possible, harmonized with that regulation." *Frene Valley Corp. v. Dep't of Social Services, Div. of Med. Services*, 926 S.W.2d 144 (Mo. App. E.D. 1996). Sections 20-2.010(4) and 20-4.010(1)(C) do not govern the same subject matter, and we logically read their provisions in harmony. While Section 20-4.010(1)(C) applies specifically to applications for review and provides that a faxed application received on a Saturday, Sunday, or legal holiday is considered filed on the next regular division working day, Section 20-2.010(4) applies to "[a]ny notice of appeal, application or other paper required under the law to be filed with the commission" and provides that in situations where the last day for filing such a paper falls on a Saturday, Sunday or legal holiday, the filing is deemed timely if accomplished on the next day which is not a Saturday, Sunday or legal holiday. In other words, if Claimant would have faxed his Application for Review on the thirtieth day, Sunday, June 12, 2016, under Section 20-4.010(1)(C), it would have been considered filed on Monday, June 13, 2016, and such a filing would have been timely under Section 20-2.010(4). The effect would have

---

**2.** Section 288.200 similarly provides that "[a]ny of the parties (including the division) to any decision of an appeals tribunal, may file with the commission within thirty days following the date of notification or mailing of such decision, an application to have such decision reviewed by the commission."

been no different than Claimant's filing in this case where he faxed his Application for Review on Monday, June 13, 2016. In either situation, the Application was timely filed, and the Commission had jurisdiction to hear the case and issue a decision.

Employer argues that while Section 20-40.010(1)(C) addresses faxed filings received on Saturday, Sunday or a legal holiday, it does not specifically state that such filings will be deemed timely filed on the next business day. But such additional language would be duplicitous of Section 20-2.010(4), which clearly applies to applications for review. Employer asserts that because Section 20-2010(5) provides that applications for review are governed by Section 20-4.010, we should refer to Section 20-4.010 without consideration of the governing rules of Section 20-2.010, which we cannot do. Section 20-2.010(1) provides that the rules in that Section, including Section 20-2.010(4), "*shall* govern the practice and procedures in *any proceeding before the commission*" (emphasis added). Further, Section 20-2.010(4) clearly indicates that it applies to "*[a]ny* notice of appeal, *application* or other paper required under the law to be filed with the commission," which would include an application for review like the one at issue here. *See id.* (emphasis added).

Furthermore, if we ignore Section 20-2.010(4) for purposes of applications for review as Employer suggests, in order to file via facsimile, Claimant would have been required to file his application on the twenty-eighth day, Friday, June 10, because any filing on the twenty-ninth or thirtieth days, Saturday or Sunday, June 11 or 12, would have been deemed filed Monday, June 13 under Section 20-4.010(1)(C). Not only is such a conclusion contrary to the clear governing rules contained in the regulations, but it also puts an unreasonable burden on parties to

these actions. The language of the Sections at issue are most logically read together, and doing so produces a reasonable result consistent with our review of the entire regulation.

Point I is denied.

█ In Points II and II, which we address together, Employer claims that the Commission erred in determining that Claimant was not disqualified from receiving unemployment compensation because it reached a decision not supported by competent and substantial evidence. Specifically, Employer argues that the Commission erred when it based its decision on the fact that Claimant's foreman "refused" to act as a spotter when that fact is not contained in the record and when it concluded that Claimant's conduct was not of such severity to manifest culpability.

█ Article 5, Section 18 of the Missouri Constitution and Section 288.210 direct this Court's review of decisions of the Commission in unemployment compensation cases. Specifically, Section 288.210 provides that the "finding of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." Section 288.210 also provides:

> The court, on appeal, may modify, reverse, remand for hearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to war-

rant the making of the award. An appeal shall not act as a supersedeas or stay unless the commission shall so order.

We review "the whole record to determine if it contains sufficient competent and substantial evidence to support the award." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* at 223.

"We defer to the Commission on issues involving the credibility of witnesses and the weight given to testimony." *Ausley v. CCL Label (St. Louis), Inc.*, 513 S.W.3d 390, 394 (Mo. App. E.D. 2017). We also defer to the Commission's factual findings and such findings will be considered conclusive if supported by competent and substantial evidence, but we do not defer to the Commission's conclusions of law or application of law to facts. *Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 898 (Mo. App. E.D. 2008). When the decision of the Commission involves a question of law, we review the issue independently. *Id.*

"Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law." *Fendler v. Hudson Services*, 370 S.W.3d 585, 589 (Mo. banc 2012).

Under Section 288.050(2), a claimant can be disqualified from unemployment compensation where there is "misconduct connected with the claimant's work." Section 288.030(23) identifies various types of conduct and violations that constitute misconduct for purposes of disqualifying a claimant from unemployment compensation. Because Employer argues Claimant's actions constitute misconduct under Section 288.030.1(23)(b) [3], we review the claim of misconduct under that subsection. "Misconduct" in Section 288.030.1(23)(b) includes "[c]onduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer." Because there is only one incident of alleged misconduct in this case and no evidence of "recurrence," [4] the

---

**3.** While not raised on appeal, the Commission also analyzed the case under Section 288.030.1(23)(e), which provides that misconduct shall also include:

> (e) A violation of an employer's rule, unless the employer can demonstrate that:
> a. He or she did not know, and could not reasonably know, of the rules requirements;
> b. The rule is not lawful; or
> c. The rule is not fairly or consistently enforced[.]

With respect to Section 288.030.1(23)(e), the Commission concluded that "[t]o the extent claimant may have violated employer's 'rule' regarding the use of a spotter," enforcement of that rule was not fair. Based on other findings in the decision, it appears the Commission found that enforcement of the rule was not fair because Claimant was following

his foreman's instructions at the time he operated the boom without a spotter.

**4.** The record indicates both that Claimant had some attendance issues prior to the incident at issue here and that he was previously suspended for failing to notify Employer that his license was suspended. Employer's area manager testified that the incident at issue here constituted 85% of the reason for his discharge while his issues with his license and attendance only constituted only 15%. Employer's area manager also testified that the seriousness of the incident at issue here would have been sufficient to suspend and/or discharge Claimant independent of his license or attendance issues. The license and attendance issues are mentioned in Employer's Statement of Facts, but they are not used to support Employer's points on appeal, and there was no "recurrence" with respect to the specific allegations of misconduct here.

question here is whether the degree of Claimant's alleged carelessness or negligence at the time of the incident was sufficient to constitute disqualifying misconduct.

■ "In general, a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." *White v. Div. of Employment Sec.*, 431 S.W.3d 583, 586 (Mo. App. W.D. 2014) (internal quotations omitted). Accordingly, Employer had the burden of proving by a preponderance of the evidence that Claimant committed misconduct connected with work. *See id.*

■ There is no bright-line test for determining misconduct, and such a determination depends on a thorough review of the facts and circumstances of each incident as well as the context in which it occurred. *Wilson v. Progressive Waste Solutions of Mo., Inc.*, 515 S.W.3d 804, 808 (Mo. App. E.D. 2017); *see also Stahl v. Hank's Cheesecakes, LLC*, 489 S.W.3d 338, 343 (Mo. App. E.D. 2016) ("[A]ppropriate analysis of whether an employee's physical actions towards a co-worker constitute misconduct require a thorough review of the totality of the facts and circumstances of the incident as well as the context in which the incident occurred."). In addition, "there is a distinction between the violation of an employer's rule justifying the employee's discharge and the violation of an employer's rule warranting a finding of misconduct connected to the employee's work." *Wieland v. St. Anthony's Med. Ctr.*, 294 S.W.3d 77, 79 (Mo. App. E.D. 2009).

Here, Employer challenges the following finding of the Commission, which Employer alleges erroneously served as a basis for the Commission's decision: "Claimant asked supervisor to be his spotter prior to operating the boom. Supervisor *refused* and instructed [Claimant] to operate the boom, regardless of the spotter's presence" (emphasis added). Employer claims that this is an "inaccurate paraphrasing" of Claimant's testimony and that the Commission's decision was not supported by competent and substantial evidence because "Claimant's testimony rebuts any conclusion that the foreman ... *refused* to serve as a spotter" (emphasis added).

While Claimant did not specifically testify that the foreman "refused" to serve as spotter, the testimony was sufficient for the Commission to conclude that Claimant did not commit misconduct under Section 288.030.1(23)(b). Claimant testified, "... I went ahead and did as my foreman told me to do, and I requested for a spotter and [the foreman] said that he would, or that it would be okay and that he would come out after he was done with the job briefing." The following question was also posed to Claimant, and he gave the following answer:

Q: Why didn't you just ask [the foreman] if he would spot you or, if you felt tight, that maybe he would do the operation and you spot him? Did you consider that?

A: Yes, when I had asked him, he said that he was filling out the briefing and he would be out of the truck in a minute. And, he said go ahead and do it while he was, uh, filling out the job briefing.

When asked again why he did not just wait for the foreman to spot him, Claimant testified, "Because [the foreman] went ahead and told me to do it and if I didn't do what he said, then that would be insubordination, not following a supervisor's command."

To the extent that the facts regarding an exchange between Claimant and the

foreman about whether to pursue the work without a spotter were disputed, the Commission explicitly found Claimant credible, and we defer to the Commission on such a determination and the weight to be given the testimony in this case. *See Ausley*, 513 S.W.3d at 394. In addition, regardless of whether the foreman "refused" to spot Claimant, Claimant's testimony reasonably established that he asked the foreman to be his spotter prior to operating the boom and that the foreman instructed Claimant to perform the work, at least initially while the foreman completed some paperwork, without the use of a spotter. Given Claimant's testimony and his concerns about insubordination, which are supported by Employer's policy that insubordination is a "serious offense" for which an employee is subject to immediate dismissal, there was competent and substantial evidence to support the Commission's finding that Claimant's "momentary distraction" did not constitute manifest culpability and its ultimate conclusion that Employer failed to prove that Claimant's conduct was frequent enough or severe enough to constitute misconduct under Section 288.030.1(23)(b).

This Court recently held that the plain language of Section 288.030.1(23)(b) "requires *a level of culpability* in order to disqualify an employee from receiving unemployment benefits." *Wilson*, 515 S.W.3d at 809-10 (emphasis in original). "[M]ere negligence, mistakes, bad judgment, and poor workmanship do not rise to the level of culpability to constitute disqualifying conduct."[5] *Id.* Under the facts of this case, where Claimant testified that he followed the instructions of his foreman out of concern over the consequences of insubordina-

tion, we do not find Claimant's conduct manifested a level of culpability. Claimant testified "I did what my foreman told me to do and you—I mean I didn't wanna [sic] get fired for insubordination." While it may have been mere negligence, a mistake or bad judgment to pursue operation of the boom without a spotter, his conduct also indicated an interest in avoiding insubordination and showed regard for his duties and obligations to the foreman as a representative of Employer. Where the Commission found Claimant was trying to avoid insubordination, under the facts of this case, there was sufficient and competent evidence for the Commission to conclude there was no culpability or wrongful intent to establish carelessness or negligence to the degree necessary to constitute disqualifying misconduct.

Employer also claims the Commission erred in reaching a decision not supported by competent and substantial evidence because it erroneously concluded that Claimant's violation of a safety protocol was not of such severity to manifest culpability. Employer argues the severe damage caused by Claimant's conduct demonstrated negligence in such a degree as to manifest culpability. In particular, Employer points to Employer's area manager's testimony that Claimant's conduct caused high voltage power lines to arc and one line to fall to the ground. He testified that the boom sustained $3,300 worth of damage and a neighboring factory was forced to shut down. While Employer had not yet received a bill from the factory, Employer typically incurs financial liability in such situations. The area manager also noted that the high voltage power line fell within

---

5. In *Wilson v. Progressive Waste Solutions of Mo., Inc.*, this Court analyzed the 2014 amendments to Section 288.030.1(23). 515 S.W.3d at 809-10. In that case, Employer argued that the amendments, which removed phrases such as "evil design" and "intentional and substantial disregard," significantly de-

creased the degree of scienter necessary for a finding of misconduct, and therefore prior case law on misconduct under this Section was inapplicable. *Id.* We concluded that the amendment did *not* abrogate previous substantive holdings and clarified the level of scienter required as indicated above. *Id.*

two feet of cars parked at the factory and suggested that there could have been fatalities had anyone been standing near the cars. The area manager also testified that there was "a risk of life" to Claimant and his co-worker. Employer adds that Claimant did not dispute any of its testimony regarding the property damage and potential loss of life that resulted from Claimant's conduct.

Nevertheless, nothing about the damage Claimant's conduct caused or could have caused changes our analysis here. Employer argues the severity of the actual and potential damage resulting from Claimant's conduct so increase the degree of carelessness or negligence that his conduct must be considered misconduct under Section 288.030.1(23)(b). While the damages were significant and could have potentially been worse, in this case, the fact that Claimant was following instructions from his foreman as he understood them sufficiently offsets Employer's claims of culpability, wrongful intent or knowing disregard for the Commission to find no disqualifying misconduct. While our decision should not be read to hold that a claimant following any instruction of a co-worker in a supervisory role can never be found to have committed misconduct under Section 288.030.1(23)(b), based upon our review of the facts and circumstances of this particular incident and the context in which it occurred, we find sufficient and competent evidence to establish that Claimant did not commit disqualifying misconduct.

Points II and III are denied.

Decision of the Commission is affirmed.

Angela T. Quigless, P.J. and Lisa S. VanAmburg, J., concur.