

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| In the Matter of<br>JENNA STAFFORD, | ) | |
| | ) | |
| Claimant/Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD32658 |
| | ) | Filed: January 9, 2014 |
| GREAT SOUTHERN BANK, | ) | |
| | ) | |
| Employer/Appellant, | ) | |
| | ) | |
| and MISSOURI DIVISION<br>OF EMPLOYMENT SECURITY, | ) | |
| | ) | |
| Respondent. | ) | |

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**REVERSED AND REMANDED WITH DIRECTIONS.**

Great Southern Bank ("Employer") appeals the decision of the Labor and Industrial Relations Commission ("Commission") finding Jenna Stafford ("Stafford") was not disqualified for benefits by reason that she was discharged from work on October 17, 2012. We reverse the Commission's decision and direct the Commission to enter an order finding that Stafford is disqualified from benefits for misconduct connected with work.[1]

---

[1] This Court has determined that this cause has been fully briefed by the parties and has therefore placed it under submission on the record and briefs without the necessity of oral argument.

**Facts and Procedural History**

Stafford worked as a full-time Customer Service Representative for Employer. Stafford began working for Employer on February 14, 2012. The last day Stafford worked was October 16, 2012. Stafford was terminated for violating Employer's absenteeism and tardiness policy, which stated:

> **Absenteeism**: Unexcused absences (without doctor's excuse or supervisor's pre-approval) three occurrences in a six month period, or five in a twelve month period, shall be deemed excessive and will receive a written warning on the third or fifth absence. If another unexcused absence occurs within the six month period, corrective action up to and leading to termination will occur.
>
> . . . .
>
> **Tardiness**: If you are not here and ready to be on the phones by your scheduled shift time any four times within a two month period is considered excessive and will be written up. The fifth time will result in corrective action up to and leading to termination.

Stafford signed the absenteeism and tardiness policy on February 18, 2012, after beginning work for Employer. This document detailed Employer's attendance policy and indicated Stafford was made aware of the policy on this date.

Additionally, Employer had an "Attendance and Punctuality" policy that stated if an employee was going to be absent or late, the employee must notify their supervisor "a minimum of 15 minutes before the start of the scheduled shift." The policy also stated that "[p]rolonged or repeated absences and/or tardies will result in disciplinary action up to and including termination of employment."

On August 20, 2012, Kara Ibarra ("Ibarra"), a Customer Service Manager and Stafford's supervisor, met with Stafford to discuss concerns regarding her attendance and tardiness over the previous six months of her employment and to remind her of the absenteeism and tardy policy. Stafford had four unexcused absences within a six-month period which warranted a "write-up."

2

Ibarra also had Stafford "re-sign" the absenteeism and tardiness policy. Stafford was made aware that her next unexcused absence would result in "corrective action."

On September 13, 2012, Stafford signed a "Corrective Action Notice" acknowledging that she had "[e]xcessive absences-last [sic] occurrence she was off for 2 weeks and does not qualify for FMLA at this time." The disciplinary action, resulting from the September 13, 2012 corrective action, consisted of a written warning that Stafford's next absence, excused or unexcused, would result in termination. Stafford signed a second Corrective Action Notice on September 14, 2012, regarding attendance and to "[b]e at work and be on time to work." The September 14, 2012 disciplinary action consisted of a final warning that Stafford's next tardy or absence, excused or unexcused, would result in termination.

Stafford was also absent from October 8 through 12, 2012, but the record does not state if the absences were excused or unexcused. Ibarra was out of the office that entire week and due to a miscommunication error with the acting manager, Stafford was not terminated. However, when Ibarra returned to work, she met with Stafford and told her that due to the miscommunication she would not be terminated, but she was still on formal probation and her next tardy or absence, excused or unexcused, would result in termination.

On October 17, 2012, Stafford was scheduled to begin work at 8:00 a.m. At 8:05 a.m., Stafford called Ibarra to let her know she had overslept. Ibarra told Stafford that due to her probation status, she was terminated. Ibarra told Stafford they would "box up her things and bring them up to HR" and she "could come in that day to pick up her things."

It appears from the record that Stafford filed a "Renewal of Claim for Unemployment Benefits" with a renewal effective date of October 21, 2012.[2] The "Benefit Year Beginning

---

[2] An "Initial Claim" was filed August 18, 2011. However, it is unclear how, or if this initial claim relates to Employer.

3

Date" on this claim was August 14, 2011. A "Notice of Renewal" was sent to Employer as "a Missouri employer who paid wages to [Stafford] during the base period of the claim[.]" Employer filed its formal protest to Stafford's unemployment claim on November 2, 2012, stating Stafford's "failure to comply with [Employer]'s attendance and punctuality policy resulted in her involuntarily [sic] termination of employment."

On November 9, 2012, the "Deputy's Determination Concerning Claim for Benefits" was filed finding Stafford was "disqualified from 10/1[7]/12 because [Stafford] was discharged by . . . Employer on 10/1[7]/12 for misconduct connected with work."[3] The deputy also found that Stafford "was absent on 10-1[7]-12" and "did not properly report her absence." On November 13, 2012, Stafford filed her answers to Division of Employment Security's ("Division") "'Pending Issue' Questionnaire" and stated she had called Ibarra on the morning of October 17 to tell her she "was walking to work since my ride did not show up" and she was going to be "late five minutes." Stafford also stated that prior to October 17, 2012, she had been "extremely" sick, had been hospitalized, and had provided her supervisor with a note from her doctor upon her return to work. On November 26, 2012, Stafford filed a "Notice of Appeal to Appeals Tribunal" ("Appeals Tribunal").

On December 21, 2012, the "Appeals Referee" held a hearing by telephone conference. Matt Snyder ("Snyder"), the Vice President and Director of Human Resources for Employer, testified that the reason for Stafford's "separation" was due to violating "employer's policy relating to attendance and punctuality[.]" Snyder testified that it was "critical that . . . employees . . . arrive to shifts as scheduled in order to be there to assist the customers when they start calling in." Snyder testified that prior to October 17, 2012, Stafford had been placed on "formal

---

[3] As best we can discern from the record, the correct date should have been "10/17/12." The confusion may stem from Employer's formal protest which stated Stafford's date "last worked" was "10.16.12." Her last full day of work appears to be October 16, 2012, and her termination date was October 17, 2012.

4

probation for attendance and punctuality . . . following many conversations convening [sic] with her regarding her failure to adhere to the attendance and punctuality policy." Snyder stated that Stafford was actually "under a corrective action, which stated specifically further absences would result in termination." He testified that Stafford had actually been absent from October 8 through October 12, 2012, but had basically been given "a free pass" because Ibarra had also been out of the office that week. When Ibarra returned the following week, she spoke with Stafford and advised Stafford she was being given "one final opportunity," but Stafford called in late to work on October 17, 2012.

Snyder stated that when Stafford called in at 8:05 a.m. on October 17, she told Ibarra that she had "woke up late." After receiving the packet of exhibits from the Division, Snyder learned for the first time that Stafford was claiming her tardiness was due to her husband being unable to give her a ride to work.

Stafford testified and acknowledged she had received a copy of Employer's absenteeism and tardiness policy. As to the events on the morning of October 17, Stafford testified that when she called Ibarra, she advised Ibarra that she had arranged for a ride to work but that her ride did not show up or return her phone calls. Stafford began to walk to work and while walking to work—she lived five blocks from Employer—Stafford noticed it was already 8:05 a.m. and called Ibarra on Ibarra's cell phone. Stafford was aware that if she had another incident of violating Employer's policy, she would be terminated. Stafford testified she asked Ibarra if she would be terminated even though she was walking to work, and Ibarra told her she would call her back when she got to the office but that calling in late would probably lead to termination. At that point, Stafford stopped walking to work and returned home. Stafford denied telling

5

Ibarra that she knew she was going to be terminated "so just box up my stuff[.]" Later that morning, Ibarra called Stafford and terminated her employment.

Ibarra confirmed Stafford called her around 8:05 a.m. and told her she had just woken up. Ibarra testified Stafford asked for her things to be boxed up because she knew she would be terminated due to previous problems. Ibarra stated Stafford did not mention she was having car trouble or trouble getting a ride to work, and Ibarra only learned this information that morning when reviewing the exhibits for the hearing. Ibarra testified that when she called Stafford back at around 9:14 a.m., she told Stafford she was terminated and her things would be boxed up and she needed to make arrangements to pick them up.

On January 2, 2013, the Appeals Tribunal reversed the Division's determination and found that Stafford was not "disqualified for benefits by reason of [Stafford]'s discharge from work on October 17, 2012." The Appeals Tribunal made findings of fact that: (1) Employer's testimony regarding Stafford's work separation was more persuasive; (2) the October 17, 2012 discharge occurred because Stafford was late to work and did not notify her supervisor 15 minutes prior to the start of her shift; (3) Stafford was running late because she did not wake up on time; and (4) Stafford may have had a health problem, but likely did not qualify for FMLA leave because she had not worked for Employer for twelve months.

The Appeals Tribunal concluded that "in spite of [Stafford]'s attendance issues, there was no evidence that any of the prior occurrences were due to [Stafford] not waking up on time. The fact that there was a single incident of oversleeping is not enough to show willfulness on the part of [Stafford.]" The Appeals Tribunal also held that Employer had good cause to terminate Stafford, but did not meet its burden to show work-related misconduct as defined by the statute.

On January 31, 2013, Employer filed its "Application for Review" to the Commission. On March 4, 2013, the Commission affirmed and adopted the decision of the Appeals Tribunal stating that the decision was fully supported by competent and substantial evidence on the whole record. This appeal followed.

Employer sets forth one point on appeal. Employer argues the Commission erred in concluding Stafford was not disqualified from unemployment compensation benefits because the competent and substantial evidence supported the conclusion she was discharged for misconduct connected with her work. Employer claims the Commission erred because: (1) Stafford admitted to repeated violations of Employer's known attendance and punctuality policy; (2) Stafford claimed she did not oversleep on the day she was terminated, rather she was walking to work and failed to call Employer within the required 15-minute notice period; and (3) the Commission failed to place the burden of proof relating to attendance and tardiness on Stafford as required by section 288.050.3.[4]

Stafford did not file a brief.[5] However, the Division filed a brief claiming the Commission's decision should be affirmed because there was sufficient competent and substantial evidence in the record to support the conclusion Stafford did not commit misconduct. The Division also argued that the burden shifting to claimant provisions of section 288.050.3, did not apply "because Employer failed to prove that [Stafford] violated its attendance policy[,] . . . [nor] did the Employer explain its understanding of the reasons for [Stafford]'s absences or tardiness."

---

[4] All references to statutes are to RSMo Cum.Supp. (2006), unless otherwise indicated. However, section 288.050 was amended in 2011, but no changes were made to section 288.050.3.

[5] While there is no penalty to Stafford for not filing a brief, this Court is then forced to adjudicate Employer's claims of error without the benefit of whatever arguments Stafford might have raised. *McClain v. Kelley*, 247 S.W.3d 19, 23 n.4 (Mo.App. S.D. 2008).

The issue for our determination is whether Stafford was disqualified from unemployment benefits because she was discharged for misconduct connected with her work with Employer.

## Standard of Review

"The appellate court's review of the Commission's decision[6] in an unemployment compensation case is governed by section 288.210, RSMo 2000." *Harris v. Division of Employment Sec.*, 350 S.W.3d 35, 38 (Mo.App. W.D. 2011). Section 288.210 provides:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

We defer to the Commission's findings of fact so long as they are supported by substantial and competent evidence based on the whole record. *Halkmon v. National Archives & Records Admin.*, 406 S.W.3d 483, 486 (Mo.App. E.D. 2013). We also defer to the Commission on matters of witness credibility and resolution of conflicting evidence. *Harris*, 350 S.W.3d at 39. However, "this Court does not defer to the Commission's conclusions of law or application of law to the facts." *Lindsey v. University of Missouri, Div. of Employment Security*, 254 S.W.3d 168, 170 (Mo.App. W.D. 2008). "Whether the Commission's findings support the conclusion that an employee was guilty of misconduct is a question of law." *Frisella*

---

[6] When the Commission adopts the decision of the Appeals Tribunal, we consider the Appeals Tribunal's decision to be the Commission's for purposes of our review. *Ashford v. Division of Employment Sec.*, 355 S.W.3d 538, 541 (Mo.App. W.D. 2011).

*v. Deuster Elec., Inc.*, 269 S.W.3d 895, 898 (Mo.App. E.D. 2008) (internal quotation and citation omitted). We review issues of law *de novo*. *Comeaux v. Convergys Customer Mgmt. Group, Inc.*, 310 S.W.3d 759, 762 (Mo.App. E.D. 2010).

## Analysis

Unemployment compensation benefits are governed by chapter 288, the Missouri Employment Security Law. Section 288.050.2 provides for the disqualification of an employee from unemployment compensation benefits where there is "misconduct connected with the claimant's work[.]" "Misconduct" is defined in section 288.030.1(23) as

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

"Work related misconduct" must involve a willful violation of the rules or standards of the employer. *Murphy v. Aaron's Auto. Prods.*, 232 S.W.3d 616, 621 (Mo.App. S.D. 2007). Without evidence that a claimant "deliberately or purposefully erred, he cannot properly be found to have committed an act of misconduct." *Id.*

The general rule under Missouri precedent is "the burden of proving eligibility for unemployment compensation benefits initially lies with the claimant, but the burden shifts to the employer if termination is premised upon an allegation of misconduct." *Hise v. PNK (River City), LLC*, 406 S.W.3d 59, 63 (Mo.App. E.D. 2013). However, section 288.050.3 specifically provides:

> Absenteeism or tardiness may constitute a rebuttable presumption of misconduct, regardless of whether the last incident alone constitutes misconduct, if the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.

9

"Pursuant to this section, once [Employer] establishes the claimant violated a known attendance policy, the burden shifts to *the claimant* to show she was not guilty of misconduct." **Wheeler v. Pinnacle Automotive Protection, Inc.**, No. ED99928, 2013 WL 6070486, at \*5 (Mo.App. E.D. Nov. 19, 2013) (emphasis added); *see also* **Johnson v. Div. of Empl. Sec.**, 318 S.W.3d 797, 803 (Mo.App. W.D. 2010) (noting "[t]he General Assembly has recognized the merit of reasonable attendance policies in section 288.050.3 by amending that subsection to allow violation of attendance policies to be considered to be 'misconduct' disqualifying the claimant when the claimant fails to rebut the presumption of misconduct.").

The Eastern District of this Court has found the "plain and unambiguous language of the 2006 amendment to Section 288.050.3 established a carve-out, or special provision[]" to the general rule that the burden is on the employer if termination is based on an allegation of misconduct. **Hise**, 406 S.W.3d at 64.[7] Applying this "special provision" means that if the misconduct of claimant is based upon the claimant's absenteeism or tardiness, and the claimant received knowledge of employer's absentee and tardy policy prior to the occurrence upon which the termination was based, "the burden of proving non-misconduct shifts back to the [claimant.]" *Id.* The risk of non-persuasion then falls on the claimant. *Id.*; **Wheeler**, 2013 WL 6070486, at \*5; **Johnson**, 318 S.W.3d at 804.

On appeal before the Appeals Tribunal, the issue was whether Stafford was discharged for misconduct connected with her work. The Commission determined Stafford "was discharged

---

[7] The Western District of this Court opined the "recent amendments suggest that the General Assembly has been attempting to direct the analysis away from the unrealistic use of the concept of 'voluntary quit' and is seeking to show a preference for 'misconduct' analysis in cases in which the employee purports to want to remain employed but is absent." **Johnson**, 318 S.W.3d at 804. The consequence of the 2006 amendment was to abrogate prior case law holding violation of an employer's absence policy standing alone, is not a finding of misconduct connected with work so as to deny unemployment benefits. *See* **Hise**, 406 S.W.3d at 65-66.

as a consequence of the violation of [Employer's] attendance policy." Therefore, section 288.050.3 applies to the determination of this matter.

Under section 288.050.3, the first determination we must make is whether the rebuttable presumption applies. Here, Employer presented evidence to raise the rebuttable presumption under section 288.050.3 because the Employer established that notice of the attendance policy was provided to Stafford and when the notice was provided. *Johnson*, 318 S.W.3d at 807. First, Stafford herself testified she received a copy of Employer's absenteeism and tardiness policy. Further evidence Stafford was aware of Employer's policy is her February 18, 2012 signature on the document entitled "ABSENTEEISM AND TARDINESS" detailing Employer's attendance policy. This took place before any absence or tardy was at issue (the first such absence taking place six months prior to August 20, 2012). It is obvious that Employer created a "rebuttable presumption" of misconduct.

Furthermore, Employer presented evidence that as of August 20, 2012, Stafford had four unexcused absences within the previous six months of her employment, which warranted a "write-up."[8] As part of her write-up, Stafford was made aware that her next unexcused absence would be a "corrective action." Stafford was given additional notice on two occasions in September 2012.[9] Stafford was given more than adequate notice of Employer's attendance policy.

---

[8] At this point, Ibarra had Stafford "re-sign" the absenteeism and tardiness policy, which was further evidence Stafford had knowledge of Employer's policy prior to the absence or tardy upon which the discharge was based. *See Hise*, 406 S.W.3d at 66.

[9] Stafford was off for two weeks and as a result, Stafford signed a Corrective Action Notice on September 13, 2012, acknowledging that she had "excessive absences." Stafford was again given a written warning that her next absence, excused or unexcused, would result in termination. She also signed a second Corrective Action Notice on September 14, 2012, regarding attendance and to "[b]e at work and be on time to work," and was given a final warning that her next tardy or absence, excused or unexcused, would result in termination.

Under section 288.050.3, this is sufficient to raise the rebuttable presumption. *Hise*, 406 S.W.3d at 65.[10] The burden then should have shifted *to Stafford to prove* her attendance infractions did not constitute misconduct. *Id.* Rather than shift the burden, the Commission improperly held the Employer had the burden of proving misconduct. This was an erroneous application of law by the Commission.

Since the presumption was raised, Stafford had the risk of non-persuasion in seeking to rebut the presumption. *Johnson*, 318 S.W.3d at 807-08. Stafford then had to rebut the presumption that she violated Employer's attendance policy, and then a determination would be made whether her absences were a "willful violation." *See Hise*, 406 S.W.3d at 68. However, Stafford did not rebut the presumption that she violated Employer's attendance policy. Stafford and the Commission both acknowledged that she violated Employer's policy and Stafford testified she was aware that if she had another incident violating the policy, she would be terminated. Stafford's termination was a consequence of her violation of Employer's absenteeism and tardiness policy.

As already noted, the Commission's determination of whether Stafford's actions constituted misconduct associated with her work is a question of law we review *de novo*. *Wheeler*, 2013 WL 6070486, at *6. "[I]f the employer creates the presumption of misconduct, the success of [Stafford] will then obviously depend on the ability of [Stafford] to persuade the hearing officer that the absences were not due to [her] fault." *Johnson*, 318 S.W.3d at 808 n.10. Here, the Commission found Employer "had a written policy that required employees to contact

_____

[10] The Division argues that the burden shifting to claimant provisions of section 288.050.3, do not apply "because Employer failed to prove that [Stafford] violated its attendance policy[,] . . . [nor] did the Employer explain its understanding of the reasons for [Stafford]'s absences or tardiness." We disagree. Employer presented two corrective action notices signed by Stafford in September 2012 noting "excessive absences" by Stafford. In addition, there was testimony and written evidence that Stafford was put on probation and warned her next tardy or absence would result in termination prior to this incident. This was confirmed by Stafford's testimony at the hearing that she was on probation at the time of her termination, and was aware that if she had another violation of the policy she would be terminated. There is no evidence contradicting the fact that Stafford violated the attendance policy.

12

a supervisor fifteen minutes prior to the start of a shift in the case of an exigency that prevent the employee from reporting as scheduled," the policy was reasonable, and Stafford was aware of the policy. The Commission found there was competent and substantial evidence that Stafford was late for a shift and failed to notify her supervisor until five minutes after her shift started. However, the Commission then improperly applied the law in holding the Employer "has not met its burden to show work-related misconduct as defined by statute." Because the burden shifted to Stafford, *she had to prove* her attendance infractions did not constitute misconduct. *Hise*, 406 S.W.3d at 65. Stafford failed to meet her burden to prove non-misconduct related to her attendance.

Once the burden shifted to Stafford under section 288.050.3, the circumstances of her absences could then be considered in a misconduct analysis. *Id.*; *see also Johnson*, 318 S.W.3d at 805. The circumstances surrounding Stafford's absences included the fact that Employer had a written attendance and tardiness policy, and Stafford signed the policy when hired; both of these facts were noted by the Commission. The Commission found Stafford received a final warning concerning her attendance *the same week* she was discharged, along with written warnings concerning her attendance on September 11 and 14, 2012. The Commission further found Employer's version of the circumstances surrounding Stafford's absence resulting in termination to be more persuasive, and determined she was late because she overslept and failed to notify her supervisor.

The Commission then improperly applied the law to the facts in determining misconduct. Citing *White v. Wackenhut Corporation*, 208 S.W.3d 916 (Mo.App. E.D. 2006), the Commission found Stafford was late because she overslept, none of her prior occurrences were shown to be due to Stafford not waking up on time, and "a single incident of oversleeping is not

13

enough to show willfulness on the part of [Stafford]." However, this case is of no assistance since the 2006 amendment to section 288.050.3. Under the 2006 amendment, a violation of an employer's absence policy now raises a presumption of misconduct connected with work so as to deny unemployment benefits. Whether Stafford's other incidents involved oversleeping or not, are irrelevant because the issue now is whether Stafford violated Employer's absenteeism and tardiness policy. Cases such as *White*, holding otherwise were implicitly abrogated by the 2006 amendment. *See Hise*, 406 S.W.3d at 65-66 ("the 2006 amendment to Section 288.050.3 implicitly abrogated prior case law.").

Under the 2006 amendment, Stafford may attempt to show her absences were not misconduct, a question we review *de novo*. However, we look at what qualifies as "misconduct" under section 288.030.1(23). Misconduct involves willful disregard of employer's interest, a deliberate violation of an employer's rules, or an intentional and substantial disregard of the employer's interest or employee's duties to employer. "The General Assembly has recognized the merit of reasonable attendance policies in section 288.050.3 by amending that subsection to allow violation of attendance policies to be considered to be 'misconduct.'" *Johnson*, 318 S.W.3d at 803. If an employee frequently violates an employer's policy, that fact may be evidence of employee's willful disregard of employer's interest, deliberate violation of rules, and disregard of employee's duties to employer. *Id.* at 804.

Here, Stafford's misconduct was evident in her complete and willful disregard of Employer's interest, her duties to Employer, and deliberate violation of Employer's rules. Despite repeated written and verbal warnings over a three-month period, Stafford continued to violate Employer's attendance policy. On the day of the incident resulting in her termination, Stafford failed to notify her supervisor fifteen minutes before the start of her scheduled shift, per

14

Employer's policy. Stafford acknowledged this failure and provided no explanation as to why she did not call her supervisor per the policy. In fact, Stafford testified that on that morning, she was awake and up more than fifteen minutes prior to her scheduled shift, but did not call until 8:05, five minutes after the start of her shift.[11]

The fact there was no evidence that Stafford's prior occurrences were due to her not waking up on time, does not make her absences something other than misconduct. Stafford was aware she had excessive absences and that one more absence, excused or unexcused, would result in termination. Yet, Stafford overslept, failed to notify her supervisor per the policy, and was absent. The circumstances surrounding her absences and her behavior are both a classic example of disregard for an employer's rules and policies.

Moreover, we find that excessive absences and tardies in violation of an employer's policy may, and in this case do, meet the definition of "misconduct" as "negligence in such degree or recurrence as to manifest culpability, wrongful intent . . . or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." § 288.030.1(23); *see Johnson*, 318 S.W.3d at 803 (holding "[w]e suppose that the kind of misconduct that occurs in the case of excessive absence is conduct that can ordinarily be described as '*negligence in such degree or recurrence as to manifest culpability*.' In some cases, perhaps, one could also call it 'wanton disregard [for] the employer's interests.'") (quoting § 288.030.1(23)) (emphasis in original). Stafford's attendance history with Employer could easily be described as including "excessive absences." Within her first six months of employment, Stafford had four unexcused absences which warranted a "write-up" and a warning

[11] The Commission found Stafford was running late because she overslept, despite Stafford's testimony that she was late because her ride did not show up. This finding was based on the Commission's conclusion that Employer's testimony was more credible. Ibarra testified Stafford called her around 8:05 on the morning in issue and told her she had just woken up.

15

that her next unexcused absence would involve a "corrective action." On September 13, 2012, Stafford signed a Corrective Action Notice acknowledging she had "excessive absences." She was again given a written warning that her next absence, excused or unexcused, would result in termination. She signed a second Corrective Action Notice on September 14, 2012, regarding attendance and to "[b]e at work and be on time to work[,]" and was given a final warning that her next tardy or absence, excused or unexcused, would result in termination.

Despite all of these warnings, Stafford was absent from October 8 through 12, 2012, while her supervisor was out of the office, and only avoided termination due to a miscommunication with the acting manager. The very next week, Stafford was told she only avoided termination due to the miscommunication, she was still on formal probation, and her next tardy or absence, excused or unexcused, would result in termination. In spite of this warning that her next tardy or absence would result in termination, along with the many other warnings, Stafford again violated Employer's policy. This violation occurred within two days of her last warning that her next tardy or absence, excused or unexcused, would result in termination.

## Conclusion

The Commission erred in failing to shift the burden of proof to Stafford and as a result, reversible error resulted in the Commission's finding that Stafford was not discharged for misconduct. Stafford's absenteeism raised the rebuttable presumption of misconduct under section 288.050.3, and Stafford failed to rebut said presumption. Stafford willfully violated Employer's attendance policy and rules, and her excessive absences amounted to negligence in such degree or recurrence as to manifest culpability, wrongful intent, and show an intentional and substantial disregard of Employer's interest and Stafford's duties and obligations to

16

Employer.  *See* § 288.030.1(23).  Therefore, Stafford is disqualified from unemployment compensation benefits because she was discharged for misconduct connected with her work with Employer.

Accordingly, we grant Employer's Point I.  We reverse the Commission's finding that Stafford is not disqualified for benefits, and direct the Commission to enter an Order finding that Stafford is disqualified from benefits for misconduct connected with work in accordance with this opinion.

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - Concurs

DANIEL E. SCOTT, J. - Concurs