Pamela AUSLEY,
Claimant/Respondent,

v.

CCL LABEL (ST. LOUIS), INC.,
Employer/Appellant,

Division of Employment Security,
Respondent.

No. ED 104439

Missouri Court of Appeals,
Eastern District,
**DIVISION FOUR.**

Filed: March 14, 2017

---

Gregg Lemley, St. Louis, Missouri, for Appellant.

Ninion S. Riley, Jefferson City, Missouri, for Respondents.

## OPINION

James M. Dowd, Presiding Judge

This unemployment benefits case presents the question of when under the recently-amended Missouri Employment Security Law do work absences on the part of a terminated employee satisfy the defi-

nition of "misconduct" so as to disqualify the employee from receiving unemployment benefits.

CCL Label (St. Louis), Inc. ("CCL"), appeals from the Labor and Industrial Relations Commission's grant of unemployment benefits to Pamela Ausley, a former employee CCL terminated because of work absences. CCL claims that Ausley's work absences constitute misconduct connected with work disqualifying her from receiving unemployment benefits. CCL argues that the Commission erroneously applied § 288.030.1(23)(c) [1] by requiring CCL to prove that Ausley was at fault for her absences because fault is irrelevant under that section. CCL also contends that the award was not supported by competent and substantial evidence.

We affirm the award because regardless of whether § 288.030.1(23)(c) required CCL to prove that Ausley was at fault, under the facts as found by the Commission, CCL has failed to carry its burden of showing that Ausley committed misconduct, and the award is supported by competent and substantial evidence.

**Factual and Procedural Background**

Ausley's employment with CCL began on April 1, 2015. At orientation, Ausley received an employee handbook containing a "progressive disciplinary process" that factored into CCL's attendance policy. As part of this process, the handbook indicat-ed that employees would receive "points" for missed work. The handbook stated that 3 points would result in a "verbal" warning, 3.25 to 4.75 points would result in a written warning, 5 points would result in a final written warning, and beyond 5 points "may result in termination." The handbook provided that CCL had discretion to review each case individually such that CCL could impose an enhanced penalty or no penalty at all for missed work, and could accelerate or waive the assessment of points.

Ausley acknowledged that she read and understood the handbook. But the handbook did not explain how points were accumulated under CCL's attendance policy or how many absences an employee was allowed under the point system before reaching a punishable level. Nor did CCL explain to Ausley how, in her particular case, points were assessed for her missed time, or how the points assessed here were connected to the discipline CCL meted out.

At Ausley's hearing in this case, CCL called Shana Allen, a CCL human resources manager, who testified concerning CCL's attendance policy. She stated that if employees notify CCL at least 10 hours before their shift that they will be absent or tardy, then no points will be assessed. Allen further testified that the point assessment system was designed to keep track of certain absences beyond an employee's accumulated paid time off.[2] She

---

**1.** Unless otherwise stated, all references to 288.030.1(23)(c) are to RSMo Supp. (2014) and all other statutory references are to RSMo Supp. (2013).

**2.** The record concerning CCL's paid-time off (PTO) policy consisted solely of Shana Allen's testimony that CCL provided PTO, and that employees started accruing PTO within the first 30 days of work. The only other references in the record to CCL's PTO policy were performance improvement plans and written warnings issued to Ausley indicating that she had at various times exhausted her PTO.

Laura Blinker, a CCL quality manager, testified at the hearing that at the time Ausley was terminated, she was "allowed" not to be in attendance on "roughly 7.5 days," but Brinker did not explain how CCL's attendance policy supported this conclusion, or whether this was in reference to CCL's PTO policy. On this evidence, the Commission made no findings regarding CCL's PTO policy.

stated that CCL's attendance policy uses the point assessment system to account for, *inter alia*, employee illness, by giving time off beyond the employee's accumulated paid time off for any reason the employee might be ill.

Allen testified that points were assessed against Ausley for eight different absences or tardies over the course of her employment with CCL. Ausley received two written warnings relating to her attendance, but neither mentioned any point assessment or referred to the progressive disciplinary process.

On May 4, 2015, after Ausley was absent due to illness on April 13, 2015, and was purportedly late to work on May 1, 2015, CCL issued her an initial written warning. The warning stated that additional absences beyond those already scheduled (as vacation time with CCL's express approval) for June 12 and 15, 2015, could result in Ausley's dismissal. Then, on September 3, 2015, CCL issued its "Final Warning" to Ausley, citing ten dates on which Ausley was purportedly absent, tardy, or left work early. Beyond the dates already mentioned, the "Final Warning" stated Ausley left work early on June 26, 2015, and was absent also on July 14 and 16, and August 12, 27, and 28, 2015. The July absences were for Ausley to euthanize her dog, and all the others were due to Ausley suffering various illnesses. The "Final Warning" concluded with the statement that "[a]ny occurrences of missed time from work including absences, tardies and/or early leaves will result in TERMINATION."

After the September 3 "Final Warning," Ausley was again absent due to illness on October 23 and 26, 2015. CCL terminated Ausley's employment on October 26 for absenteeism. Ausley filed for unemployment benefits. CCL protested, arguing that it terminated Ausley for misconduct connected with work. A deputy from the Missouri Division of Employment Security ruled that Ausley's absenteeism constituted misconduct that disqualified her from receiving unemployment benefits. The Division's Appeals Tribunal affirmed. Ausley appealed to the Commission.

The Commission found in favor of Ausley, ruling that she did not commit misconduct as defined by § 288.030.1(23)(c). The Commission found specifically that Ausley was not sufficiently aware of CCL's attendance policy. The Commission determined that although the attendance policy informed Ausley that CCL could discipline her for missing work, the policy did not inform Ausley how and under what circumstances missed work would result in discipline. Further, the Commission found that Ausley was not late for work on May 1, that her early leave on June 26 was approved by CCL, and that she provided 10 hours' notice for all of her absences but one: the August 27 absence.

Based on these factual findings, the Commission ruled that Ausley did not violate a known attendance policy of CCL. The Commission also ruled that Ausley did not have two or more unapproved absences after a written warning relating to a prior unapproved absence. The Commission reasoned that § 288.030.1(23)(c) requires that the claimant be "at fault" for her absences to be disqualified from receiving benefits. Accounting for Ausley's substantial number of absences due to personal illness, the Commission found that Ausley has an auto-immune disorder that has compromised her immune system and causes her to frequently fall ill. Because Ausley was ill on both October 23 and 26, 2015, the Commission concluded that she was not at fault for her two absences following the September 3 "Final Warning." As a result the Commission found Ausley eligible to receive unemployment benefits. This appeal follows.

## Discussion

The Missouri Constitution permits judicial review of administrative decisions concerning the substantive rights of individuals. Mo. CONST. art. V, § 18; *Seck v. Mo. Dep't of Transp.*, 434 S.W.3d 74, 78 (Mo. banc 2014). Section 288.210 outlines the parameters of our judicial review and sets forth the following standard:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

We review questions of law de novo, and the issue whether the Commission's findings support the conclusions that a claimant engaged in misconduct connected with his or her work is a question of law. *Fendler v. Hudson Servs.*, 370 S.W.3d 585, 588–89 (Mo.banc 2012) (quoting *Tenge v. Washington Grp. Int'l, Inc.*, 333 S.W.3d 492, 496 (Mo.App.E.D. 2011)). We determine whether competent and substantial evidence supports the award by examining the evidence in the context of the whole record. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo.banc 2003). We do not view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award. *Id.* We

defer to the Commission on issues involving the credibility of witnesses and the weight given to testimony. *Fendler*, 370 S.W.3d at 588 (citing *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 288 (Mo.banc 1995)).

The distribution of unemployment compensation benefits is governed by the Missouri Employment Security Law in Chapter 288. *Stafford v. Great S. Bank*, 417 S.W.3d 370, 376 (Mo.App.S.D. 2014). It is Missouri's declared public policy that unemployment reserves be set aside for the benefit of individuals unemployed through no fault of their own. *Lentz v. Home Sec. of Am.*, 380 S.W.3d 1, 4–5 (Mo.App.E.D. 2012) (citing § 288.020.1.2). The provisions of § 288.020 *et seq.* are intended to be construed liberally to accomplish the State's public policy. *Lentz*, 380 S.W.3d at 5 (citing § 288.020.2). To execute this policy, disqualifying provisions are construed strictly against the disallowance of benefits. *Id.* (citing *St. John's Mercy Health Sys. v. Div. of Emp't Sec.*, 273 S.W.3d 510, 514 (Mo.banc 2009)).

A claimant is not eligible to receive unemployment compensation benefits if he or she was "discharged for misconduct connected with claimant's work." § 288.050.2 RSMo Supp. (2014); *Seck*, 434 S.W.3d at 82. Misconduct, after the 2014 amendment, is defined in § 288.030.1(23) as follows:

> conduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:
>
> . . .
>
> (c) A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more unapproved absences following a written rep-

rimand or warning relating to an unapproved absence unless such absences are protected by law.

Whether the Commission's findings support the conclusion that an employee was guilty of misconduct is a question of law that we review de novo. *Hise v. PNK (River City), LLC*, 406 S.W.3d 59, 62 (Mo. App.E.D. 2013).

■ While, in general, a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits, when the employer claims that the applicant was discharged for misconduct connected with work, the burden shifts to the employer to prove the claim of misconduct. *Stahl v. Hank's Cheesecakes, LLC*, 489 S.W.3d 338, 342 (Mo.App.E.D. 2016). The standard of proof is by a preponderance of the evidence. *Id.*

As a result of the 2014 amendment to § 288.030.1(23), employers do not have a heavy burden to prove that an employee committed attendance-related misconduct. Section 288.030.1(23)(c) provides that work-related misconduct related to absenteeism shall include (1) a violation of the employer's no-call, no-show policy; (2) chronic absenteeism or tardiness in violation of a known policy of the employer; or (3) two or more unapproved absences following a written reprimand or warning relating to a previous unapproved absence.

Here, CCL cited "absenteeism" without reference to any no-call, no-show policy as its basis for disciplining Ausley and eventually terminating her employment. Thus, the first of these three options for proving attendance-related misconduct is not at issue in this case. As to the second, we agree with the Commission that competent and substantial evidence in the record supports a finding that Ausley did not violate a known attendance policy of her employer. As to the third and final option, we conclude that on this record CCL has simply

failed to carry its burden of establishing that Ausley was issued a written warning relating to a distinctly "unapproved" absence and thereafter had two more unapproved absences. We address in turn CCL's arguments regarding options two and three.

With regard to the second option, CCL contends that the evidence does not support the Commission's determination that Ausley did not violate a known attendance policy of CCL. Specifically, CCL points to Ausley's acknowledgement that she read and understood the employee handbook containing a "progressive disciplinary process" that somehow factored into CCL's attendance policy, and to her statement to the Division indicating that she was aware of the existence of some sort of "policy for absenteeism" at CCL. However, the record demonstrates merely that the handbook informed Ausley that the progressive disciplinary process meant that CCL could punish her upon the accumulation of a certain number of "points," could assess points at an accelerated rate, could waive assessed points, or could impose an enhanced punishment or no punishment at its discretion. And while the progressive disciplinary process suggested that CCL could engage in disciplinary action ranging from no action to discharge upon Ausley's absence from work, it did not specify how that might occur. Nor did CCL prove that Ausley knew based on any other source of information how missed work would subject her to discipline under CCL's attendance policy.

On this record, CCL has failed to show that it informed Ausley how points were accumulated under the policy, how points were assigned for the absences in her case, or how many absences she was allowed under the point system before reaching a punishable level. The record evinces confusion and disagreement surrounding how

many points were accumulated in Ausley's case and whether Ausley could avoid the assessment of points by providing prior notice of her absences. Thus, the Commission's assessment that CCL failed to show that it communicated its attendance policy to Ausley in a manner clearly establishing its expectations regarding her attendance was supported by competent and substantial evidence, as was the Commission's finding that Ausley did not violate a known attendance policy of her employer.

With regard to the third option in subsection (c), CCL had the simple and straightforward burden to show that Ausley had been given a written reprimand relating to an unapproved absence and, thereafter, had two or more additional unapproved absences. We find that CCL failed to carry its burden to show by a preponderance of the evidence that CCL issued a written warning to Ausley relating to a prior unapproved absence, or that she thereafter had two more unapproved absences.

Critically, nothing in the record here—including CCL's handbook and CCL's written warnings to Ausley—indicates what would constitute an unapproved absence under CCL's attendance policy. We strongly reject CCL's suggestion at oral argument that the employer's issuance of a "final warning" may be used to establish misconduct under the third option of § 288.030.1(23)(c) *even if* the unapproved absence referenced in the final warning was baseless or even *fabricated*. And certainly, the mere fact that CCL named a

particular date of absence in a written warning does not make that absence unapproved. Here, in its initial written warning of May 4, 2015, CCL cited a tardy that did not actually occur and an absence for which Ausley provided the required 10 hours' notice. And in the "Final Warning" of September 3, 2015, CCL cited all the dates Ausley was absent and listed among those vacation days for which CCL gave Ausley express approval.

Moreover, while some of these listed dates may have generated points under CCL's point system, the record before us does not demonstrate that the assessment of points for an absence is the equivalent of the absence being unapproved as required to show misconduct under the third option of § 288.030.1(23)(c). We agree with the Commission's finding that only one of the dates CCL listed in its "Final Warning," Ausley's August 27, 2015 absence due to illness, actually generated points pursuant to CCL's attendance policy,[3] and we find that on this record, nothing indicates that the assessment of points for an absence due specifically to illness, at least, meant that it was unapproved.

CCL's Allen testified that the point assessment system was designed to keep track of certain absences beyond an employee's accumulated paid time off. Allen explained how CCL's attendance policy accounted for "everyday things that happen and then illness as well" by testifying that in addition to accumulated paid time off, employees are given "a point system, which … *gives you more … time*—you

---

**3.** Here, CCL's witness Shana Allen testified that points were assessed against Ausley for eight of the listed absences or tardies, but she also testified, "[w]e do have a policy as far as calling in, that you need to call in—if you call in 10 hours before your shift, then no points will be assessed. If you call in after that with a short notice, then points will be assessed." The Commission found that Ausley provided

10 hours' notice for all her missed work except for her absence due to illness on August 27, 2015. CCL failed to cite any evidence to show that Ausley failed to provide such notice on any other date. Accordingly, on the facts as found by the Commission and under CCL's notice policy to which Allen testified, Ausley was subject to point assessment only for missing work due to illness on August 27, 2015.

know, gives you a substantial amount of time, any reasons you might be sick." (emphasis added). Thus, while Ausley's August 27, 2015 absence due to illness may have triggered application of CCL's point assessment system, CCL has failed to show that that point assessment indicated that Ausley's absence was unapproved. Indeed, given the obvious risks of having an ill employee present at work, CCL may have concluded that it was best to *approve* of Ausley's absence, while still tracking it as time taken off beyond her accumulated paid time off. We conclude therefore that CCL failed to carry its burden to show that the "Final Warning" it issued to Ausley was related to an unapproved absence.

We also find that CCL has failed to shoulder the second part of its burden: to show that Ausley had two unapproved absences following her receipt of the "Final Warning." Ausley provided 10 hours' notice for her only two absences following the "Final Warning," on October 23 and 26, 2015. According to the only evidence in the record about how CCL assessed points under its attendance policy, Ausley should not have been assessed points for these absences for which she provided sufficient notice.

The only sense in which these absences could be understood to be unapproved would be that CCL stated in the "Final Warning" that any of Ausley's absences after September 3, 2015 would result in termination. But, as discussed below, the right to terminate Ausley presents an issue distinct from whether Ausley may be denied unemployment benefits due to misconduct. Moreover, CCL did not act consistently with *this* policy declaration, either; Ausley was not terminated upon her first absence after the "Final Warning," on October 23, 2015, for which she provided 10 hours' notice that she would miss work due again to illness.

Therefore, we find that CCL failed not only to demonstrate that Ausley was issued a written reprimand or warning relating to an unapproved absence, but also failed to show that Ausley thereafter had two more unapproved absences.

CCL's burden of proof under § 288.030.1(23)(c) is not diminished or shifted to Ausley because CCL is an at-will employer with a virtually unfettered right to terminate Ausley whether she engaged in misconduct or not and without any reference to or reliance on CCL's attendance policy. Whether an employer has solid grounds to terminate an employee—in the context of at-will employment, notably any legal or even no grounds at all—is not the same issue as whether the former employee qualifies for compensation under the employment security act. *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo.App.W.D. 2005); *see also Tolliver v. Friend Tire Co.*, 342 S.W.3d 428, 432 (Mo.App.E.D. 2011) (observing that although the claimant-employee's conduct may have justified the employer's decision to discharge him, the claimant-employee was entitled to benefits because the employer failed to meet its burden of proving misconduct). In the past, Missouri courts have determined that there is "a vast distinction between the violation of a rule of an employer that would justify the discharge of the employee and a violation of such rule that would warrant a determination of misconduct connected with the employee's employment so as to disqualify him or her for unemployment compensation benefits." *Hoover*, 153 S.W.3d at 13 (quoting *McClelland v. Hogan Pers., LLC*, 116 S.W.3d 660, 665 (Mo.App.W.D. 2003)). Here, where the question is whether Ausley should be denied post-termination unemployment benefits because she missed time at work, we would add that there is a similar, even more profound difference between a clear

attendance-policy violation constituting disqualifying misconduct, and the *absence* in this record of *any* sort of clear violation of CCL's attendance policy.

Both points on appeal are denied.

### Conclusion

For the reasons stated above, we affirm the Commission's award.

Gary M. Gaertner, Jr., J., concurs.

Kurt S. Odenwald, J. dissents in a separate opinion.

### KURT S. ODENWALD, Judge, dissenting.

I respectfully dissent with the majority's holding and would reverse and remand the award to the Labor and Industrial Relations Commission ("the Commission") with instructions to apply the correct legal standard when making its findings on whether the employee's absences from the workplace were approved or unapproved. It is undeniable and indeed undisputed that the Commission erroneously interpreted and applied the state statute defining misconduct by requiring "fault" on the part of the employee in connection with unapproved absences from the workplace. The Commission's continued reliance on the absence of employee fault under these facts knowingly disregards the statutory revisions enacted by the state legislature in 2014 to address chronic employee absenteeism in the workplace.

The majority opinion countenances the Commission's clear departure from the statutory mandate by suggesting that the record lacks evidentiary support that the employer, CCL Label (St. Louis), Inc. ("CCL"), failed to carry its burden to show

that the employee, Pamela Ausley ("Ausley"), committed misconduct in the workplace by having had two or more unapproved workplace absences after she had been given a written reprimand relating to an unapproved absence. I disagree with the majority holding because the record contains substantial evidence from which the Commission could find that Ausley had unapproved absences from the workplace which meet the statutory definition of misconduct and disqualify her from unemployment benefits.

Because the Commission applied an erroneous standard premised upon fault, it failed to make the appropriate finding as to whether Ausley's absences at issue were approved or unapproved under the statutory parameters enacted by the legislature in 2014. Neither the Commission nor this Court may disregard the plain and clear language and mandate of the legislative amendment reflected in Section 288.030.1(23)(c) [1]. Accordingly, I would set aside the award of the Commission and remand for a determination of whether the applicable absences were "unapproved" under the parameters of Section 288.030.1(23)(c).

### Discussion

As noted by the majority, the 2014 amendment to Section 288.030.1(23) substantially lessened an employer's burden of proving attendance-related misconduct. Of the three ways to prove attendance-related misconduct under this legislative revision, I disagree with the majority's holding as to the third option—that CCL failed to carry its burden with regard to providing substantial evidence that Ausley's absences were unapproved.

---

1. Unless otherwise stated, all references to Section 288.030.1(23)(c) are to RSMo Supp.  (2014).

Ausley was hired by CCL on April 1, 2015.[2] Within 7 months of her hire, Ausley accumulated numerous absences. In her brief employment with CCL, Ausley was purportedly absent, tardy, or left work early 12 times.[3] In addition to informal verbal warnings, CCL gave Ausley a written notice on May 4 admonishing her that additional absences, other than those already scheduled and approved, could result in her dismissal. Ausley was again absent from work on Thursday, August 27 and Friday, August 28. CCL gave Ausley a final written notice on September 3. The September 3 warning recounted Ausley's prior occasions of missed work, as well as CCL's previous warnings to Ausley about her attendance. Further, the September 3 warning declared that **"[t]his will be your FINAL WARNING.** Any occurrences of missed time from work including absences, tardies and/or early leaves **will result in TERMINATION."** [4] Ausley was absent from work on Friday, October 23 and Monday, October 26 due to an illness. CCL terminated Ausley's employment on October 26 for absenteeism.

The Division of Employment Security ("the Division") ruled that Ausley's absenteeism constituted misconduct resulting in her discharge. The Division's Appeals Tribunal affirmed. Ausley appealed to the Commission which overturned the prior rulings based upon its erroneous interpretation and application of the law. Importantly, the Commission ruled that Ausley did not have two or more unapproved absences after a final written warning because Section 288.030.1(23)(c) required that the two absences be purposefully caused by the claimant to meet the statutory requirements of "unapproved." Because Ausley was ill, the Commission concluded that she was not at fault for the final two absences after the written warning. Therefore, Ausley did not commit, nor was she discharged for, misconduct connected with her employment. Thus, the Commission concluded that Ausley was eligible to receive unemployment benefits.

Without question, the Commission entered its award in favor of Ausley by erroneously inserting a fault requirement into the statutory definition of misconduct in Section 288.030.1(23)(c). CCL maintained that misconduct required only that it prove Ausley had two "unapproved" absences not protected by law after she was given a final written notice relating to a prior "unapproved" absence. The Commission, however, erroneously relied upon a general statement of public policy that unemployment reserves are to benefit claimants who are faultlessly unemployed as its justification for imposing a fault requirement for "unapproved absences" despite the plain language of Section 288.030.1(23)(c).[5] Acknowledging the misinterpretation and misapplication of the law by the Commission, the majority now seeks to salvage the Commission award by disregarding the Commission's erroneous application of the law and instead holding that CCL did not meet its burden of showing employee misconduct. Stahl v. Hank's Cheesecakes,

---

**2.** All dates occurred in 2015, unless otherwise stated.

**3.** Ausley missed work on April 13, May 1, June 12, June 15, June 26, July 14, July 16, August 12, August 27, August 28, October 23, and October 26.

**4.** Emphasis added.

**5.** The distribution of unemployment compensation benefits is governed by the Missouri Employment Security Law in chapter 288. Stafford v. Great Southern Bank, 417 S.W.3d 370, 376 (Mo. App. S.D. 2014). The express purpose of the Missouri Employment Security Law is to combat the consequences of unemployment and to provide aid to those who are unemployed "through no fault of their own." Section 288.020.1 RSMo (2000).

LLC, 489 S.W.3d 338, 342 (Mo. App. E.D. 2016). More specifically the majority suggests that CCL did not show that it issued Ausley a written warning relating to a distinct "unapproved" absence and thereafter had two more "unapproved" absences.

I agree with the majority that the legislative revisions of 2014 did not relieve the employer of its burden to prove misconduct. My disagreement with the majority opinion is that the record contains sufficient evidence from which the trier of fact reasonably could find that CCL sustained its burden that the employee absences at issue were unapproved, and therefore triggered the absentee-related misconduct disqualification provided under Section 288.030.1(23)(c).

The majority engages in fact-finding that exceeds the scope of our appellate review and goes far beyond any facts purportedly found by the Commission as part of its statutory duty. The record is patently clear that the Commission limited its review of misconduct in relation to "unapproved absences" to a factual determination of fault. Because the Commission determined that Section 288.030.1(23)(c) required a nexus between fault and absence to establish misconduct, the Commission did not make a finding of whether the September 3 warning given to Ausley pertained to a prior "unapproved" absence or if Ausley's two subsequent October absences were "unapproved." The majority opinion's finding that CCL did not prove misconduct based upon this subsection of Section 288.030.1(23)(c) is not supported by any finding of the Commission and is clearly refuted by the record.[6]

My review of the record reveals ample evidence to support a finding that the Sep-

**6.** Interpreting misconduct as requiring two "unapproved" absences rather than two "purposeful" absences is consistent with the legislative history pertaining to the statutory definition of misconduct. Prior to the 2014 amendment to the Missouri Employment Security Law, misconduct was defined in part as willfully disregarding an employer's interest or deliberately violating an employer's rule. Section 288.030.1(23) RSMo Cum. Supp. (2013); Scrivener Oil Co. v. Crider, 304 S.W.3d 261, 268 (Mo. App. S.D. 2010). Cases interpreting willful misconduct reasoned that because absences due to illness or family emergency were "attributable to circumstances beyond [claimant's] reasonable control," such absences were not voluntary. Robinson v. Courtyard Mgmt. Corp., 329 S.W.3d 736, 740 (Mo. App. E.D. 2011). A pattern of involuntary absences was not willful misconduct, as the claimant was not purposefully absent from work. See id. However, the 2014 amendment removed the "willful disregard" or "knowing violation" language from the pre–2014 definition of misconduct. See Section 288.030.1(23)(c). Had the legislature intended to maintain a distinction between purposeful absences and involuntary absences, it could have retained the requirement for a willful disregard of an employer's interest or a deliberate violation of an employer's rule.

The current definition of misconduct expressly removes the prior requirement that an employee willfully disregard an employer's interest or deliberately violate an employer's rule. Cf. Odom v. Glazer's Distribs. of Mo., Inc., 495 S.W.3d 833, 836 (Mo. App. W.D. 2016) (stating that there is no requirement that the claimant knowingly violate a no-call, no-show policy in order for his or her act to be considered misconduct under Section 288.030.1(23)(c)). Under the current statutory scheme, the employer is not required to prove that the claimant was purposeful in his or her violation of the attendance policy. See id. Giving effect to the statutory changes recognizes the legislature's systematic broadening of the definition of misconduct to include additional conduct, and acknowledges the legislative history of Section 288.030.1(23)(c) as eliminating any requirement that an employer show fault with regard to employee absences which occur after an employee has received a written warning related to prior unapproved absences. See Kolar v. First Student, Inc., 470 S.W.3d 770, 777 (Mo. App. E.D. 2015). As presently written, Section 288.030.1(23)(c) only requires an employer to prove an employee had two "unapproved" absences followed by a written warning pertaining to a prior "unapproved" absence, unless the absences are protected by law. The

tember 3 warning related to a prior "unapproved" absence and that the October 23 and October 26 absences also were "unapproved." The warning given to Ausley on September 3 related to her absence of August 27. This absence was due to illness, which is *not* listed as an excusable absence under the CCL's written attendance policy. The record further shows that Ausley did not notify CCL of her absence in accordance with the notice provision of CCL's policy and that CCL assigned points against Ausley for this absence, which CCL did not do for absences it had approved for Ausley earlier in June. Further, when asked if the August 27 absence was unapproved, Ausley, on a questionnaire from the Division, answered affirmatively by stating that she was assigned a half-point for the absence.

With regard to the October absences which immediately preceded Ausley's termination, the record again shows that the absences were unapproved as they were due to illness, which is not listed as an excusable absence under CCL's written policy. Moreover, the record is clear that CCL explicitly told Ausley in the warning of September 3 that *any* additional absences would result in the termination of her employment. Whether the Commission or this Court agrees with CCL's policy of not categorizing illness as an approved absence is not the issue before us. The only issue is whether the absences at issue were unapproved by CCL.

Admittedly, some of the confusion as to whether the record supports a finding that an absence was approved or unapproved stems from the simultaneous system of assessing points for an employee's ab-

sence. The majority concludes that an employee absence for which points were not assessed is necessarily an approved absence. The flaw in this proposition is the lack of any evidentiary support. The record simply does not equate the assessment or non-assessment of points with approval or non-approval of an employee absence. The only clear evidence as to whether an absence due to illness (the reason given by Ausley for both the October 23 and 26 absences) was an approved or unapproved absence is that illness is *not* listed on CCL's written attendance policy as an excusable absence. The record does not compel a finding that any employee absence for which points are not assessed are necessarily approved absences, which is theory underlying the majority opinion. Taking the majority rationale to a logical extreme, Ausley could be absent every day for a month due to illness, and if she timely called in each absence so as to avoid the assessment of points, none of her absences would be unapproved. CCL's individualized point assessment system provides CCL and its employees with a mechanism for tracking absenteeism. I am not persuaded from the record before us that the assessment or non-assessment of points is determinative of whether the absence at issue was approved or unapproved.

The record is unequivocal that the reasons Ausley gave for her bookend absences of Friday, October 23 and Monday, October 26 was illness.[7] In her appeal to the Commission, Ausley does not assert that her absences were approved, but maintains only that her absences were unavoidable because of her illness and because of an emergency. Neither Ausley's final absences nor the reasons given by

---

employer need not prove that the claimant was at fault for the absences or purposefully acted to cause the applicable absences in order to establish misconduct as defined by statute.

7. Curiously, the record shows that the majority of Ausley's absences directly preceded or followed a weekend.

CCL for Ausley's termination were fabricated. While the record before us is somewhat sparse, the evidence certainly does not mandate a finding that the non-assessment of points for a particular absence renders that absence "approved." The fact-finding tribunal endowed with the authority to consider that issue stopped far short of any such finding because it limited its findings to an arbitrary and erroneous assessment of fault. Critically, the Commission did not make any factual findings specific to whether those two absences, or any absence due to illness, were "approved absences" under the statutory scheme.

The lack of illness as an approved or otherwise excused absence in CCL's written attendance policy is sufficient evidence from which a trier of fact reasonably could find that the absences stemming from an employee's illness are unapproved for purposes of determining misconduct. In fact, such a finding is wholly consistent with the legislative revisions of 2014, which were implemented to address chronic employee absenteeism, regardless of fault. Moreover, the precise warnings and concerns given to Ausley on May 4 and September 3 regarding her absences provide further evidence from which a trier of fact reasonably could conclude that Ausley's absences at issue were unapproved by CCL. Whether conflicting evidence may allow the trier of fact to reach a different finding is beyond the scope of our review. Contrary to the majority's assertion, the record contains substantial evidence that CCL sustained its burden of proving Ausley's absences were unapproved under Section 288.030.1(23)(c). The Commission's failure to assess the evidence in light of the proper legal standard should preclude our affirmance of the Commission's award.

Because the Commission determined that Section 288.030.1(23)(c) required CCL to prove fault to establish misconduct, the Commission did not make a finding of whether the September 3 warning pertained to a prior "unapproved" absence or if the two subsequent October absences were "unapproved." The record contains evidence from which the Commission reasonably could find that the September 3 warning related to a prior "unapproved" absence and that the October 23 and October 26 absences were "unapproved." Accordingly, I would grant Respondent's first point on appeal and remand this matter to the Commission for a factual determination of whether the written warning of September 3 related to a prior "unapproved" absence and if Ausley's subsequent absences in October were "unapproved" as required under Section 288.030.1(23)(c).