SHERRI B. SULLIVAN, P.J.
Introduction
Ste. Genevieve County Health Department (Employer) appeals from the Labor and Industrial Relations Commission's (Commission) decision reversing the decision of the Appeals Tribunal, which denied Employee's application for unemployment benefits based on misconduct in connection with her discharge, and awarding Employee benefits. We affirm.
Factual and Procedural Background
Employee began working for Employer as an administrative clerk on August 2, 2000. Employee's supervisor was executive administrator Sandra Bell (Bell). On June 2, 2017, the date of Employee's discharge, Employee entered Bell's office to ask her for two hours off work on June 22, 2017, to take her daughter to the doctor. Employee had exhausted all of her designated leave time and Bell denied Employee's request for time off. Bell testified Employee became angry and yelled at her. Employee testified she did get upset when she was in Bell's office.
Employee proceeded to walk to the front office area to "cool off" and began to get things together to go to the post office as she normally did for the office. Bell told Employee if she left she was not coming back. Employee then entered another office, closed the door, and called a member of Employer's board of directors. Bell followed Employee and told her to make the call on her own time and to get back to work. Bell told Employee, "You need to leave." Employee then emptied her desk and left the premises.
Lee Jacobs (Jacobs) is a front office window clerk at Employer. Jacobs testified "it was getting loud," so he closed Bell's office door. Jacobs said he heard Employee state, "I need off. It's not my fault." Jacobs heard Bell state, "You don't have any time." Jacobs said Employee then said, "It's not my fault. I have an appointment for Tamie and I need to take off."
Tara Jarrett (Jarrett), administrative support at Employer, was also present in the front office on the date in question, and also heard Employee yell, "It's not my fault." Jarrett further testified she then witnessed Employee and Bell walking up to the front, and Employee was very upset.
*859 Employee told Bell she needed to leave for just a few minutes and Bell said, "If you leave, then you need to leave your keys here." Jarrett stated Employee said, "This is not fair," and was clearly upset. Bell went back to her office. Employee packed up her personal belongings at her desk and proceeded to another employee's office and shut the door. Jarrett said Bell then followed Employee into the front office, told Employee to make her calls on her own time, and to leave for the day and do it on her own time. Employee took all of her belongings and left.
Robert Bach (Bach) is a member of Employer's board of directors. Employee called him on the day she was told to leave and told him what had happened. Bach conducted an investigation and made his own determination there had been a verbal exchange between Employee and Bell loud enough for other members of the organization throughout the building to hear, along with at least one member of the public. He concluded that this, along with her having insisted on time off after exhausting her allowed leave, constituted gross insubordination on Employee's part sufficient to justify her termination. Bach spoke with various employees, including Jacobs, Jennifer Wheeler, Employee, and Bell. Bach asked Employee to come back to the building. Employee declined to return, stating she was "out of town."
Following his investigation and upon conferring with the other board members, the decision was made to terminate Employee. Bach, on behalf of the board of directors, wrote a letter to Employee, dated the same day as Employee's termination, which began with a lengthy paragraph on attendance issues, then stated, "Further, a verbal exchange with the executive administrator [Bell] on the above date, within earshot of colleagues and a visiting member of the public, is indeed inappropriate."
After she was terminated, Employee applied for unemployment benefits with the Division of Employment Security (Division). In her Discharge Questionnaire, a form provided by the Division, Employee was asked: "9. Were you discharged for attendance reason? (absent, tardy, missing work, leaving work, leaving early, etc." Employee responded "No." In the General Discharge Questionnaire completed by Employer, in response to the question "What was the last incident that caused [Employee's] discharge?" Employer wrote:
[Employee's] separation was due to violating [E]mployer's code of conduct by becoming disturbing in the clinic area office. [Employee] raising her voice, yelling and disturbing the office, refusing to discuss her concerns without yelling at the administrator.
The employee code of conduct is encompassed in Employer's Personnel Manual and was entered into the record and provides as follows:
All persons employed with, or volunteering at, [Employer] are expected to observe and practice a moral code of ethics that includes respect, honesty and integrity in all activities and interactions with the public and each other. The accepted code of ethics is universal in nature and includes principles, values, standards, or rules or behavior that guide the decision, procedures and systems of the organization in a way that contributes to the welfare of its mission, and respects the rights of all constituents affected by its operations. Violations of a code of conduct may subject the violator to the organization's remedies which can under particular circumstances result in the termination of employment.
*860 The deputy for the Division concluded Employee's separation was due to her violating Employer's code of conduct by yelling at her supervisor. The deputy found "[Employee] was witnessed by another employee who sighted [Employee] as the loud and yelling party." The deputy denied Employee's application for benefits and made the finding Employee "was discharged by [Employer] for misconduct connected with work," and the reason was "[Employee] was discharged because she was yelling. [Employee] directed her yelling toward her administrator [Bell]."
Employee appealed the deputy's decision to the Appeals Tribunal, which affirmed the deputy's decision. Employee appealed the decision of the Appeals Tribunal to the Commission. The Commission reversed the decision of the Appeals Tribunal and entered its decision finding: "[E]mployer discharged [Employee] on June 2, 2017, because of [Employee's] conduct in response to [Bell's] denial of [Employee's] request for two hours of medical leave on June 22, 2017, relating to a medical situation involving [Employee's] daughter." The Commission also found:
The nature of the verbal exchange between [Employee] and Employer's administrator after administrator's denial of [Employee's] leave request was in dispute. Employer's witnesses only corroborated the following statements made by [Employee]: 'It's not my fault' and 'It's not fair.'
In its Conclusions of Law, the Commission held "[Employee] violated no known standard of conduct by protesting [Bell's] action as unfair and noting that the situation was not [Employee's] fault," and neither of these statements "showed disrespect nor demonstrated insubordination by disobedience of any order." The Commission found Employee was not disqualified from benefits due to misconduct connected with her discharge from employment. This appeal follows.
Point on Appeal
Employer claims the Commission erred in holding Employee was not discharged "for misconduct connected to work" in that when objectively reviewing the entire record, the facts as found by the Commission do not support the award of benefits because Employee's acts in yelling loudly and angrily at Bell, making a scene in front of the public, storming out of Bell's office, leaving the building, and telling Bach she was "out of town" are all acts of misconduct as defined by the statute and support a denial of benefits.
Standard of Review
Article V, Section 18 of the Missouri Constitution provides for judicial review of the Commission's decision to determine whether it is supported by competent and substantial evidence upon the whole record. MO. CONST. art. V, § 18 ; see also Section 288.210.[1] Upon review, this Court may modify, reverse, remand for rehearing, or set aside the decision of the Commission upon the following grounds and no other:
(1) when the Commission has acted without or in excess of its powers;
(2) the decision was procured by fraud;
(3) the facts found by the Commission do not support the decision; or
(4) there was no sufficient competent evidence in the record to warrant the decision.
Section 288.210.
Whether the decision is supported by competent and substantial evidence is judged by examining the evidence *861 in the context of the whole record. Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 223 (Mo. banc 2003). This Court defers to the Commission on issues involving the credibility of witnesses and the weight given to testimony. Jackson v. Walgreen Co., 516 S.W.3d 391, 394 (Mo. App. E.D. 2017). This Court reviews questions of law de novo , and whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law. Id.
Discussion
The Commission determined Employee violated no known standard of conduct by protesting Bell's action as unfair and noting the situation of having to take her daughter to the doctor for an emergent situation was not her fault. Two other employees heard these words voiced by Employee while speaking to Bell. The Commission found Employee may have been loud and upset in making such protests, but this did not rise to the level of disrespect or insubordination.
We come to the same conclusion as the Commission. As defined by Section 288.030.1,
(23) "Misconduct," only as the term is used in this chapter, [is] conduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:
(a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards of which the employer expects of his or her employee; ....
Section 288.030.1(23)(a).
Employee's acts, as Employer asserts, "in yelling loudly and angrily at Bell, making a scene in front of the public, storming out of Bell's office, leaving the building, and telling Bach she was 'out of town' " may be grounds to terminate her employment if Employer believes this conduct is not in conformance with its code of conduct for its employees. However, these acts do not rise to "misconduct," as defined by Section 288.030.1(23)(a), such that they disqualify her from receiving unemployment benefits. A contrary viewpoint would entail a draconian construction of the meaning of the word "misconduct" as set forth in the statute.
Whether an employer has solid grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation under the employment security act. Ausley v. CCL Label (St. Louis), Inc., 513 S.W.3d 390, 397 (Mo. App. E.D. 2017). The standard is "conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards of which the employer expects of his or her employee." Section 288.030.1(23)(a). Employee's act of making a request for two hours off for a family medical appointment is not a knowing disregard of Employer's interests. Similarly, her actions in becoming visibly and audibly upset for a short period of time while protesting a denial of her request did not undermine Employer's interests or subvert its standards.
When an employer claims an employee was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work by a preponderance of the evidence. Stahl v. Hank's Cheesecakes, LLC, 489 S.W.3d 338, 342 (Mo. App. E.D. 2016). Here, Employer has failed to prove Employee's episode of being upset at being denied two hours to take her daughter to a doctor's *862 appointment and expressing her distress and protest to what she perceived to be an unreasonable decision rises to the level of misconduct sufficient to justify being disqualified from receiving unemployment benefits after being discharged from her job.
The Commission's decision is supported by substantial and competent evidence. Employer's point on appeal is denied.
Conclusion
The Commission's decision is affirmed.
Lawrence E. Mooney, J., and James M. Dowd, J., concur.

All statutory references are to RSMo Cum. Supp. 2015, unless otherwise indicated.