

# Missouri Court of Appeals

### Southern District

### Division One

HILDA TAVENNER, )
                    )
    Claimant-Appellant, )
                    )
    vs. )         No. SD36367
                    )
PRESBYTERIAN MANORS, INC., )         Filed:  May 21, 2020
                    )
    Employer-Respondent, )
                    )
and MISSOURI DIVISION OF )
EMPLOYMENT SECURITY, )
                    )
    Respondent. )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

## **REVERSED AND REMANDED**

Hilda Tavenner ("Employee") was a twenty-three year employee of Presbyterian Manors, Inc. ("Employer").  One of her duties was to submit reports to a government agency.  Her February 2019 report contained an error.  Employer was notified two months later of the error and Employee was subsequently fired.  Employee filed for unemployment benefits; Employer challenged the claim.  A Missouri Division of Employment Security ("DES/Respondent") deputy found that Employee was not disqualified for misconduct connected with work; however, the DES Appeals Tribunal reversed the deputy's determination and ruled that Employee was guilty

1

of misconduct in failing to submit a timely and complete report.  The Labor and Industrial Relations Commission ("the Commission") affirmed the ruling of the Appeals Tribunal and adopted its decision as its own.  We reverse the Commission's decision and remand for an award of benefits.

Whether the Commission's decision is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record.  *Fisher v. Ste. Genevieve County Health Department*, 561 S.W.3d 857, 860 (Mo.App. E.D. 2018) (citing MO. CONST. art. V, § 18; *see also* section 288.210).[1]

> Upon review, this Court may modify, reverse, remand for rehearing, or set aside the decision of the Commission upon the following grounds and no other:
> (1)  when the Commission has acted without or in excess of its powers;
> (2)  the decision was procured by fraud;
> (3)  the facts found by the Commission do not support the decision; or
> (4)  there was no sufficient evidence in the record to warrant the decision.

*Id.*  (citing section 288.210).

It is the Commission's responsibility to make unequivocal, affirmative findings of fact in its decision.  *Wooden v. Div. of Employment Sec.*, 341 S.W.3d 770, 774 (Mo.App. W.D. 2011). We defer to the Commission on issues involving the credibility of witnesses and the weight given to the testimony.  *Fisher*, 561 S.W.3d at 861.  "In conducting such review, we manifestly are not bound by any of the Commission's legal conclusions or application of the law to the facts."  *Mickles v. Maxi Beauty Supply, Inc.*, 566 S.W.3d 274, 277 (Mo.App. E.D. 2019). "Essentially, the Missouri Constitution and the Missouri Employment Security Law task this Court with reviewing the Commission's unemployment-compensation decisions for legal error." *Id.*  The question of whether the Commission's findings support the conclusion that an unemployment compensation claimant engaged in disqualifying misconduct connected with his

---

[1] All references to statutes are to RSMo 2016, unless otherwise specified.

or her work is a question of law subject to de novo review. *Fisher*, 561 S.W.3d at 861. "[W]e do not view the evidence *and all reasonable inferences drawn therefrom* in the light most favorable to the award." *Wooden*, 341 S.W.3d at 774 (emphasis added).

"The purpose of Missouri's unemployment compensation act is to provide benefits to persons who are unemployed through no fault of their own. . . . Because of this, we must strictly construe the act's disqualifying provisions against the disallowance of benefits to unemployed but available workers." *Id.* at 773 (internal citations and quotations omitted). Employer bears the burden of proving misconduct. *Business Centers of Missouri, Inc. v. Labor and Industrial Relations Commission*, 743 S.W.2d 588, 589 (Mo.App. E.D. 1988).

With these standards of review in mind, we accept as credibility determinations from the Commission that:

> [Employee's] job responsibilities included completing and submitting a quarterly report to the federal government. This report affected [E]mployer's online retirement community ratings. [Employee] had successfully submitted the reports since 2016. She knew that it was a priority, along with other priority duties.
> One quarterly report was due November 15, 2018. Employer expected [Employee] to submit it before the due date, so that it could be reviewed for mistakes. [Employee] submitted it on the due date. The next quarterly report was submitted on February 15, 2019, but was incomplete. It was missing staffing hours, which were available to [Employee]. [Employee] admitted that the report, including the missing staffing hours, was her responsibility and her mistake.
> On April 1, 2019, [E]mployer issued a performance review, stating that information was to be completed monthly in preparation for the quarterly report. Neither [Employee] nor [E]mployer realized that the information from the February 15, 2019, report was incomplete, until April 22, 2019, when [E]mployer received a lowered rating from five to three stars, mainly attributable to the incomplete report.
> On May 10, 2019, [E]mployer discharged [Employee] for neglect of her duties.

The Commission then made the following conclusions:

> On the whole record the competent and substantial evidence shows that [Employee] knew that one of her top job priorities was to submit a quarterly

3

report to the federal government. Employer expected the report to be submitted in time to allow a review for accuracy. [Employee] submitted the reports on the due date. One of the reports was incomplete, causing harm to [E]mployer's online ratings. Employer discharged [Employee] for neglect of her duties, by submitting reports on the due date, without [E]mployer's review, and then submitting an incomplete quarterly report to the federal government.

Under the statute, misconduct includes conduct or failure to act demonstrating a knowing disregard of [E]mployer's interest or a knowing violation of [E]mployer's standards, and includes carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the [E]mployer's interest or of the employee's duties and obligations to [E]mployer.

When [Employee] failed to submit the reports until the due date, she knowingly violated [E]mployer's interest and standards. When she failed to submit a complete report, causing damage to the company, she was careless or negligent in such degree as to manifest a knowing disregard of [E]mployer's interest and [Employee's] duties and obligations to [E]mployer. Therefore, under the statute, [Employee's] conduct and failures do rise to the level of misconduct.

The [E]mployer has met its burden of proving misconduct by a preponderance of the evidence. The [Commission] concludes that [Employee] was discharged on May 10, 2019, for misconduct connected with [Employee's] work.

In summary, the Commission concluded that the failures to submit reports until the due date violated Employer's interests and standards as one act of negligence and in failing to submit a "complete" report as the second act of negligence. The question we must answer in both Points I and II is whether the conduct, described as "neglect" of Employee's duties, meets the definition of "misconduct" as set forth in section 288.030.1(23). The relevant sections of misconduct in this case are:

> (a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee;
> (b) Conduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

Section 288.030.1(23)(a) and (b).

4

Simple negligence can be sufficient for misconduct, but only if (1) it was the employee's motive or purpose to injure the employer's interest or (2) that the employee's disregard of those interests (or of employee's duties and obligations) was both intentional and substantial. *Seck v. Department of Transp.*, 434 S.W.3d 74, 82-83 (Mo. banc 2014). The *scienter* required for misconduct relevant to this case, as defined in *Seck*, is category three, a showing of knowing "disregard" that was both intentional and substantial. The Commission stated that the failure to submit the reports early and accurately was a knowing disregard of Employer's interest.

Employee appeals both the Commission's findings on the two different acts of misconduct as found by the Commission, the timing and the accuracy of the reports submitted to the government agency. In Point I, Employee appeals the Commission's conclusion of "misconduct" in the submission of the reports in November 2018 and February 2019 directly to the federal agency rather than internally so it could be reviewed. In Point II, Employee appeals the Commission's conclusion of misconduct in the submission of the February 2019 report which contained errors.[2]

Regarding Point I, we must and do accept a factual finding regarding the November 2018 report that "Employer expected [Employee] to submit it before the due date, so that it could be reviewed for mistakes." We must determine whether the expectations of Employer and subsequent failure of Employee to adhere to those expectations constitute "misconduct" as defined under the Employment Security Act. As noted, whether the factual finding that Employee failed to submit the report before the due date is "misconduct" is a question of law.

Employer bore the burden of showing that the filing of the report on its due date was "misconduct." Although Respondent cites Employer's expectations to find "misconduct," it

---

[2] Employee brings a third point that we need not address. Employee posits the Commission erred in concluding that Employee was disqualified from benefits on the basis of misconduct because, in the context of the "whole record," the Commission failed to show that Employee engaged in any misconduct connected with her work.

cited no cases in which "expectations" were found to be misconduct. We could find no cases to support that proposition either. Whether an employer has grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation under the Employment Security Act. *Ausley v. CCL Label (St. Louis) Inc.*, 513 S.W.3d 390, 397 (Mo.App. E.D. 2017). Thus, while not meeting expectations of the employer may be grounds for firing, it is not necessarily grounds for the denial of unemployment benefits.

We must look to case law defining misconduct to make that determination. In *Fisher*, the applicant for benefits had gotten into a verbal confrontation with her employer when the employer refused to let the employee take off two hours to take her child to the doctor. 561 S.W.3d at 858-59. The appellate court affirmed the Commission's finding that the applicant's actions in becoming visibly and audibly upset for a short period of time while protesting a denial of her request for leave did not undermine Employer's interest or subvert its standards despite the fact that it may have been grounds to terminate her employment as a violation of its code of conduct for employees. *Id.* at 861. The court found that a contrary viewpoint would "entail a draconian construction" of the meaning of the word "misconduct" as set forth in the statute. *Id.*

Likewise, in *Wooden*, the employee failed "to complete his assigned duties, specifically, picking up trash on the grounds first thing when he arrived at work." 341 S.W.3d at 771. The employer contended that the employee had been given specific instructions "numerous times" to pick up the trash when he first arrived at work at 7:00 a.m. each morning. *Id.* Employer stated that a state agency that was reviewing employer to see if the employer had corrected any problems, such as trash on the grounds, was returning for a visit on the day employee was fired. *Id.* at 772. Despite not meeting the employer's expectations and a finding that employee had been given specific instructions to pick up the trash, the appellate court found that the

Commission did not make unequivocal, affirmative findings of fact warranting the denial of benefits. The court further found that it could not make an intelligent review of the decision and remanded for further findings. *Id.* at 774. In remanding for further findings, the court rejected the Division's request to draw reasonable inferences from the evidence and from the record as a whole because the court determined that two inferences could be made. *Id.*[3]

In *Con-Way Truckload, Inc. v. Wood*, 511 S.W.3d 478 (Mo.App. W.D. 2017), an employee was fired in violation of section 288.050.2(a) and (b). *Id.* at 480. The employee, while driving a company truck, misjudged a highway entrance ramp, and taking it at a higher rate of speed than his load allowed, overturned the truck and trailer. *Id.* at 481. He was fired by his employer and applied for unemployment benefits. *Id.* Despite Employer's employee conduct policy providing that "unacceptable pattern or history of unsafe driving . . . were grounds for automatic discharge" and that employee was driving too fast on the day of the accident, the appeals tribunal concluded that the employee was not disqualified from benefits because

---

[3] The court in *Wooden* remanded to the Commission for a finding whether a "rule" had been violated by Wooden. Respondent latches onto *Wooden* to contend that a remand is necessary for findings whether Employee violated section 288.030.1(23)(e), a provision that allows for a finding of misconduct if employee violated a "rule" of employer. Respondent does not address what "rule" Employee is said to have violated. Employer did not make that contention at any of the hearings and there is no evidence in the entire record that Employer had a "rule" that provided a deadline for the filing of the report. A review of the record in this case indicates that there are not two reasonable inferences as to the knowledge of Employee of a rule that the reports were to be submitted prior to the due date to the federal government. For instance, while Employer complains that the November 15, 2018 report was not timely filed with Employer prior to November 15th, the evidence was clear that Employee was out sick on November 13th and 14th. Despite that fact that Employee was already not meeting Employer's expectations if a rule was being violated, Employer supplied technical help so that the report could be filed on November 15th, not November 12th. There is no testimony as to how much before the filing date the report should have been filed for review with Employee's supervisors. The testimony is also clear that after the report was filed in February 2019, Employer did not check the report to see if there were any errors in it. In fact, the Commission made the finding that neither Employee nor the Employer knew of any errors in the report. Thus, there is no evidence that Employee prevented a review of the report (ostensibly the reason for the early preparation of the report) in violation of any rule.

In contrast, in the case of *Jackson v. Walgreen Co.*, 516 S.W.3d 391 (Mo.App. E.D. 2017), cited by Respondent, employer had a Social Media and Personal Web Sites policy which established rules that prohibited certain behavior by employees on social media and personal websites. *Id.* at 392. Employee violated that written policy by posting a pornographic video and falsely connecting the video with two female coworkers. *Id.* The appellate court found sufficient competent evidence on the record as a whole to find misconduct as defined by section 288.030.1(23)(e). *Id.* at 394-95. In the case at hand, Respondent has not demonstrated evidence in the record to support a remand.

employer did not provide competent and substantial evidence that employee's accident was more than simple negligence or that his safety history involved more than two recurring episodes of carelessness or negligence which were distant in time from the final incident. *Id.* at 482. The appellate court affirmed that employer had failed to establish that employee had knowingly disregarded the employer's interest or knowingly violated a standard which employer expected of him. *Id.* at 484. Despite findings that the employee was speeding, the employer presented no evidence that employee was driving in excess of a posted speed limit or that he knew he was driving too fast for the conditions. *Id.* The Commission had determined that his driving was "at most a matter of poor judgment in handling the tractor-trailer." *Id.* at 482.

In ***Zinevich v. Digital Monitoring Products***, ***Inc.***, 462 S.W.3d 923 (Mo.App. S.D. 2015), employee failed to follow managerial directives, particularly, failing to attend a webinar. *Id.* at 925. The appeals tribunal specifically found credible employee's testimony that he did not attend the webinar because he did not receive the password and login information required to attend. *Id.* at 926. The appeals tribunal concluded that while employee may have shown poor judgment in contacting fellow employees instead of a supervisor or manager to obtain the webinar password, he did not willfully violate Employer's standard by failing to attend the webinar. *Id.* This Court reviewed the scienter required to support "negligence" as sufficient for misconduct only if employee's motive or purpose was to injure employer's interest or that employee's disregard of those interests (or of employee's duties and obligations) was both intentional and substantial. *Id.* at 928-30.

There is no finding, allegation, or evidence suggesting that Employee had a motive or purpose to injure the Employer's interest or that any disregard of Employer's interest was both intentional and substantial. There was no finding by the Commission that Employee knew of

8

Employer's expectations. The Commission did not cite any evidence, nor does the record show that Employee was reprimanded for not filing the report with management prior to the filing with the government in November or February. Employee was not fired after either "late" report. The November report was not completed and submitted prior to its due date. The evidence indicates that, in November, Employee was allowed sick leave to be at home the two days prior to the filing date. Employer arranged for Employee to work remotely to compete the report in time for direct filing. Employee was not fired in February when the report was not submitted directly to Employer prior to the filing with the government agency. She was not fired until after the mistake in the February report was made known to Employer. Thus, there is no evidence to suggest that the filing of a report on its due date was even a violation of Employer's standards, much less that it includes carelessness or negligence in such a degree or recurrence as to manifest culpability, wrongful intent or a knowing disregard of the Employer's interests or of the employee's duties and obligation to the Employer. Respondent insists that the conclusion of law is a credibility determination. Respondent must make findings of fact that can be reviewed by this Court. A simple statement that Employee committed a "willful violation" is not a factual finding, but, rather, a conclusion of law. We reject the conclusion as not supported by the facts found by the Commission. Point I has merit.

In Point II, Employee contends that the filing of the incomplete report in February, at most, suggests simple negligence and not "carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer." We agree. There was only one incident of a mistake being made on a report, which was the report made on February 15, 2019. As noted, the negligence must be in such a degree to manifest culpability, wrongful intent

9

or a knowing disregard of Employer's interest or of Employee's duties and obligations to the Employer; however, there was no evidence of any wrongful intent as required by section 288.030.1(23)(a). Negligence can stand as misconduct only if it was a "knowing" disregard of Employer's interests. The findings of the Commission directly rebut that claim. The Commission found that the report submitted on February 15, 2019, was incomplete. The Commission calls the report "[Employee's] mistake."[4] The Commission specifically found that neither Employee nor Employer knew of the mistake.

Respondent's only argument concerning the mistaken report is that, "[Employee] failed to properly fill-out the February 15, 2019 report." Making a mistake on a financial report or not meeting Employer's expectation, even if it caused a problem for Employer, is not the sort of misconduct that constitutes a knowing disregard of the employer's interest or a knowing violation of the standard of which the employer expects of his or her employee. "'Simple acts of negligence, accidents and mistakes, bad judgment, or poor workmanship do not rise to the level of scienter required to constitute disqualifying misconduct.'" *Wayne v. Division of Employment Security*, No. WD83132, 2020 WL 2027318, at *3 (Mo.App. W.D. Apr. 28, 2020) (quoting *Wilson v. Progressive Waste Solutions of Mo, Inc.*, 515 S.W.3d 804, 808 (Mo.App. E.D. 2017)). We can find no cases that define "misconduct" as defined in section 288.030.1(23) for the failure to properly fill out a report. The Commission found it to be a mistake; mistakes are made in the workplace. Point II also has merit.

The decision of the Commission is reversed and remanded.

---

[4] Employer also argues in response to Employee's Point II that Employee did not use due diligence in submitting the reports because she failed to submit both reports in a timely manner. That claim is rejected in Point I.

Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, P.J., – Concurs

William W. Francis, Jr., J., – Concurs